Vernon J. BOND, Jr., Appellant,

v.

UNITED STATES, Appellee.

Nos. 4136–4141.

District of Columbia Court of Appeals.

Argued April 17, 1967.

Decided Oct. 3, 1967.

Edward P. Taptich, Washington, D. C. (appointed by this court) for appellant.

James W. Knapp, Atty. Dept. of Justice, with whom David G. Bress, U. S. Atty., Frank Q. Nebeker, Earl J. Silbert and Charles L. Owen, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, MYERS, Associate Judge, and CAYTON (Chief Judge, Retired).

MYERS, Associate Judge:

On January 14, 1965, following a trial without a jury, appellant was found guilty of unlawful entry[1] and petit larceny[2] from the Piedmont Airlines' office. A month later in another non-jury trial, he was convicted of the same offenses involving the Trans World Airlines. We are asked to review his convictions in these cases, consolidated here for appeal.

The evidence as developed at the Piedmont trial reflects that the company's offices consist of a first-floor suite of three

1. D.C.Code § 22–3102 (1961 ed.).

2. D.C.Code § 22–2202 (1961 ed.).

rooms: a front room for customer information and sales; the sales manager's office in the rear; and a middle room or utility office in which a safe is kept. The public has the right of access only to the front room.[3] A Piedmont employee testified that on March 23, 1964, about 11 a. m., he heard a noise in the manager's office and went to investigate. As he passed through the middle room, he noticed that the safe was open. In the manager's office, he found a stranger attempting to leave by the rear door. When the employee tried to question him, he ran away. A check of the safe revealed that $79 was missing from the cash box. From photographs furnished by the investigating officers, the employee identified appellant as the intruder. On June 29, 1964, pursuant to a warrant, Bond was arrested and taken by squad car to the precinct. The arresting officer testified that en route there appellant admitted the thefts from the Piedmont office, as well as two similar thefts from the nearby TWA office.

At the second trial, on February 18–19, 1965, a TWA employee testified that about 5:30 p. m. on April 6, 1964, she locked a petty cash box in a cabinet in the office in which she worked and left the keys on her desk while she went into an adjoining room. When she returned about fifteen minutes later, she found the cabinet door ajar and her keys as well as the cash box missing. The cash box found discarded in a basement lavatory with an uncertain amount of money[4] missing, bore latent fingerprints subsequently identified as those of appellant.

The same employee further testified that by May 4, 1964, all locks had been changed. On that date, before leaving for the day, she locked the cabinet where the cash box was kept and took her new keys home. Another employee testified that he had worked late that evening and about 8 p. m. found a stranger in the closed office who, upon being questioned, said that he was a TWA employee and worked "for the man in the back room." He could not, however, give the name of his supposed employer and was vague as to the nature of his duties. While being further questioned, he peremptorily left the scene. The following morning the cabinet was found to have been forced open and the cash box removed. Approximately $230 was missing. Bond was later identified as the man found in the office. As in the Piedmont trial, the arresting officer testified as to appellant's confession made at the time of his arrest on June 29, 1964.

At both trials, appellant denied his guilt. He admitted, however, that one evening he did visit the TWA building, explaining that he was there to see a friend, whom he did not further identify.

Against this factual background, we consider appellant's various allegations of error.

## I. *Absence of Special Findings*

As to the January trial, appellant contends it was reversible error for the trial judge to deny his request for special findings.

Rule 14 II(b) of the criminal rules of the trial court, which is virtually identical with Rule 23(c) of the Federal Rules of Criminal Procedure, provides that "[i]n a case tried without a jury the court shall make a general finding and shall in addition *on request* find the facts specially." [Emphasis supplied.] Cases construing the Federal rule have held that a request made pursuant to this rule is "the

---

3. Two employees of a business concern on the floor above had permission to go through the manager's office to use the door leading to the outside to reach their parking places in the alley. This door is always locked and cannot be opened from the outside.

4. Although the amount was uncertain, it seems to have been in excess of $100. This, however, does not defeat a conviction for petit larceny. Brock v. United States, D.C.Mun.App., 122 A.2d 763 (1956).

proper procedure by which a defendant may preserve a question of law for purposes .of appeal." Cesario v. United States, 200 F.2d 232, 233 (1st Cir. 1952), and is "[o]rdinarily, the remedy to rectify a misconception regarding the significance of a particular fact." Wilson v. United States, 250 F.2d 312, 325 (9th Cir. 1958). Without a timely request for special findings, however, a general finding is sufficient. United States v. Devenere, 332 F.2d 160, 162 (2d Cir. 1964).[5] We think that these cases present a correct interpretation of Rule 14 II(b) of the trial court as well.

■ The cited cases and the express wording of the rule establish that a defendant is entitled to special findings as a matter of right and not by judicial discretion, but it is a right which must be claimed. If not timely exercised, it must be construed as having been waived and its denial does not in itself entitle a defendant to a new trial. To hold otherwise would enable a defendant to secure a second trial without regard to the merit of any claim of error.

■ In the instant case, appellant was represented from the beginning by competent counsel. At trial no request was made for special findings. Not until eighteen months after trial was such a request made.[6] Under the circumstances, we hold it was not error for the trial judge to deny appellant's request for special findings.

## II. Denial of Speedy Trial

Appellant also contends he was denied a speedy trial and thereby deprived of due process of law. He does not especially complain that the period between the filing of the informations and the trials was unreasonable, but rather that the total elapsed time between offenses and the trials violated the dictates of the Sixth Amendment.

■ The facts and circumstances of each case determine the applicability of the Sixth Amendment. Taylor v. United States, 99 U.S.App.D.C. 183, 238 F.2d 259 (1956). These facts and circumstances must be viewed in the light of five factors: (1) time involved; (2) who caused the delay; (3) the purposeful aspect of the delay; (4) prejudice to the defendant; and (5) waiver by the defendant.[7]

### 1. Time Involved

■ For the purpose of determining whether the Sixth Amendment guaranty of a speedy trial has been violated, most circuits look only to the time elapsed after the formal indictment or information.[8] In this

5. See also United States v. Schuemann, 119 F.Supp. 640, 641 (D.Neb.1954); United States v. Edmiston, 118 F.Supp. 238, 239 (D.Neb.1954); Annotation, 13 L.Ed.2d 1119, 1129 (1965).

6. Appellant filed notice of appeal in this court shortly after conviction, but in the absence of a sufficient transcript or statement of proceedings and evidence, we revoked our initial permission to appeal in *forma pauperis*, which ruling was reversed in the United States Court of Appeals for the District of Columbia Circuit (Bond v. United States, 360 F. 2d 504 (D.C.Cir.1966)) upon the authority of Tate v. United States, 123 U.S. App.D.C. 261, 359 F.2d 245 (1966). After remand to this court, appellant's appointed counsel then requested special findings.

7. The first four factors are enunciated in United States v. Parrott, 248 F.Supp. 196, 202 (D.D.C.1965), the fifth in United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963). These same factors have more recently been stated as "the length of delay; reasons for the delay; diligence of prosecutor, court and defense counsel; and reasonable possibility of prejudice from the delay." Hedgepeth v. United States (Hedgepeth II), 365 F.2d 952, 954 (D.C.Cir. 1966).

8. See e.g., Harlow v. United States, 301 F.2d 361 (5th Cir.), cert. denied, 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56 (1962); Foley v. United States, 290 F. 2d 562 (8th Cir.), cert. denied, 368 U.S. 888, 82 S.Ct. 139, 7 L.Ed.2d 88 (1961), rehearing denied, Harlow v. United States, 371 U.S. 906, 83 S.Ct. 204, 9 L.

jurisdiction, however, the entire period between offense and trial may be considered. Mann v. United States, 113 U.S.App.D.C. 27, 29–30 n. 4, 304 F.2d 394, 396–397 n. 4, cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962). Cf. Hanrahan v. United States, 121 U.S.App.D.C. 134, 348 F. 2d 363 (1965).[9] Thus, in the instant case, speedy trial contentions could possibly be assessed from the perspective of the dates on which the offenses were committed. This was done in Hedgepeth v. United States (Hedgepeth II), 125 U.S.App.D.C. 19, 365 F.2d 952 (1966); Hedgepeth v. United States (Hedgepeth I), 124 U.S.App.D.C. 291, 364 F.2d 684 (1966).[10] But where the government knows that a crime has been committed but not the identity of the offender, time cannot be reasonably computed from a date earlier than that on which the government first had probable cause for arrest.[11] Here appellant was not identified and connected with the Piedmont and first TWA thefts until April 18, 1964. The maximum periods we may therefore consider are, as to the Piedmont offenses, nine months between identification and trial, and, as to the TWA offense of April 6, 1964, ten months.[12]

### 2. *Who Caused the Delay*

■ Except in extreme circumstances, delay caused by the defendant is not to be computed in determining whether a defendant has been denied a speedy trial. King v. United States, 105 U.S.App.D.C. 193, 265 F. 2d 567 (*en banc*), cert. denied, 359 U.S. 998, 79 S.Ct. 1124, 3 L.Ed.2d 986 (1959). Therefore, in our consideration, we compute only the delay which may reasonably be charged against the government.

■ Appellant first became a suspect on April 18, 1964; he was arrested June 29, 1964. The two and one-half month delay between identification and arrest, caused by errors and confusion in warrants, must be charged against the government. Another three weeks passed before appellant appeared in court and was bound over to the grand jury. This also can be charged to the government. On October 12, 1964, the grand jury returned an ignoramus. The present informations were filed October 22, 1964.

■ Time consumed in grand jury proceedings is not chargeable against the government, since this is regarded as the routine, normal delay inherent in judicial procedures. United States v. Kennedy, D. C.App., 220 A.2d 322, 325 (1966). Cf. King v. United States, supra. The ten days between the return of the ignoramus and the filing of the informations, although not an unreasonable time, must, however, be as-

Ed.2d 167 (1962); Parker v. United States, 252 F.2d 680 (6th Cir.) cert. denied, 356 U.S. 964, 78 S.Ct. 1003, 2 L. Ed.2d 1071 (1958); D'Aquino v. United States, 192 F.2d 338 (9th Cir. 1951), cert. denied, 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343 rehearing denied, 343 U.S. 958, 72 S.Ct. 1053, 96 L.Ed. 1358 (1952).

9. See also Petition of Provoo, 17 F.R.D. 183 (D.Md.), affirmed per curiam, 350 U.S. 847, 76 S.Ct. 101, 100 L.Ed. 761 (1955).

10. Also Jackson v. United States, 122 U.S. App.D.C. 124, 351 F.2d 821 (1965); Cannady v. United States, 122 U.S.App. D.C. 120, 351 F.2d 817 (1965); Mackey

v. United States, 122 U.S.App.D.C. 97, 351 F.2d 794 (1965); Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965). These cases, however, involved narcotics violations where the government had actual knowledge of the offenses and the identity of the offenders on the dates the offenses were committed.

11. See United States v. Parrott, supra note 7. See also Note, 34 Geo.Wash. L.Rev. 527, 535, 538–39 (1966).

12. The second TWA violations do not, of course, have the benefit of this computation since they occurred May 4, 1964.

sessed against the government. Thus, of the nine or ten months between identification and trial, only three and one-half months (the period between identification and the filing of the informations) may be directly attributable to the government.

### 3. *The Purposeful Aspect of Delay*

 To be chargeable against the government, delay need not be due to bad faith or chicanery. United States v. Parrott, 248 F.Supp. 196, 203 (D.D.C.1965). See also Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). But it must be shown that the government has made "a deliberate choice for a proposed advantage, which caused as much oppressive delay and damage to the defendant as it would have caused if it had been made in bad faith." Petition of Provoo, 17 F.R. D. 183, 202 (D.Md.), affirmed per curiam, 350 U.S. 847, 76 S.Ct. 101 (1955). After weighing the responsibility of the government for the time lags in the present case, we are of the opinion that the delay attributable to it was not malicious, vexatious or of such nature and duration as to warrant a reversal.

### 4. *Prejudice to the Defendant*

 Where the delay is substantial, prejudice is presumed and to overcome this presumption the government has the burden of proving that there was no more delay than is reasonably attributable to the ordinary processes of justice and that the accused suffered no serious prejudice thereby. Williams v. United States, 102 U.S. App.D.C. 51, 53, 250 F.2d 19, 21 (1957) [seven-year delay]. There is no clear in-

dication of the strength of the presumption[13] or the length of time which will be considered "substantial."[14] When the delay is less than "substantial," although purposeful, oppressive or negligent, at least some showing of a strong possibility of prejudice is required. The *Ross* case, 121 U.S.App. D.C. 233, 349 F.2d 210 (1965), held that a plausible claim of inability to recall or reconstruct the events of the day of the offense, where the evidence against the defendant was only the recollection of one witness refreshed by a notebook, was evidence of prejudice.[15] The most compelling showing of prejudice would be the unavailability, as a result of the delay, of key witnesses who could substantiate a valid defense, but the accused must show that but for the delay the witnesses would have been available to testify.

 Based on these criteria, we find that appellant has made no showing of prejudice or even a reasonable possibility thereof. The delay was less than substantial, and appellant did not claim either that, by reason of the delay, he could not recall at trial his activities on the dates of the offenses or that key witnesses were no longer available.

### 5. *Waiver by the Defendant*

In general, the right to a speedy trial is waived unless it is asserted promptly. Mathies v. United States, 374 F.2d 312, 314 n. 1 (D.C.Cir.1967); James v. United States, 104 U.S.App.D.C. 263, 261 F.2d 381 (1958). In *Hedgepeth I,* supra, it was, however, suggested that since the government has the responsibility to bring a case to trial, it "may not 'sit back' and then

13. The concurring opinion in Nickens v. United States, 116 U.S.App.D.C. 338, 344, 323 F.2d 808, 814 (1963), holds that generally a defendant need not show prejudice, but in cases of less than a one-year delay, there must at least be some showing of prejudice. Cf. Jackson v. United States, 122 U.S.App.D.C. 124, 351 F.2d 821 (1965).

14. E. g., Petition of Provoo, supra note 9 [ten years]; United States v. McWilliams, 82 U.S.App.D.C. 259, 163 F.2d 695 (1947) [four and one-half years].

15. 121 U.S.App.D.C. at 238, 349 F.2d at 215. See also cases collected supra note 8.

argue that defendant's inaction conclusively waived his right to a speedy trial," but the court there could not find the delay "arbitrary, purposeful, oppressive or vexatious," [16] and, therefore, affirmed the conviction on the merits after a year's delay.

■ We are of the opinion that, absent a prompt assertion of the right, a speedy trial challenge will not be recognized on appeal unless defendant has suffered actual prejudice caused by the delaying tactics of the government. In case of doubt as to the existence of prejudice, the proper means for exploring that issue is by appropriate motion in the trial court.

### III. *Confessions*

#### A

■ Appellant contends that his confessions were secured in violation of the safeguards required by Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and should not have been admitted against him at trial. Following Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), this jurisdiction has refused to apply the *Miranda* standards retroactively.[17] Since the trials in this appeal antedated the *Miranda* holding, we assess appellant's contention only in the light of the earlier standard stated in *Escobedo*.

■ Under *Escobedo*, the violation of a Sixth Amendment right must be claimed and an objection entered at trial in order to preserve for appellate review the contention that evidence was obtained in violation of that right. United States v. Indiviglio, 352 F.2d 276 (2d Cir.1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966); Reed v. District of Columbia, D.C.App., 226 A.2d 581, 584 (1967) affirmed per curiam order, U.S.App.D.C., October 2, 1967. Specific objections must be made in order to give the trial judge opportunity to correct any error and thus avoid the necessity of further proceedings, or possibly a new trial.

■ Appellant did not choose to raise his claim in the trial court. Furthermore, the record, by which we are bound, discloses that en route to the precinct he was informed by the arresting officer of his rights, including his right to remain silent, but insisted on confessing that he had committed the offenses at the Piedmont and TWA offices and pointing out the places where they had taken place. His frank admissions of guilt were voluntary and in no way violative of the principles enunciated in *Escobedo*.

#### B

■ Appellant further contends that criminal rule 39(a)[18] of the trial court, which is substantially identical to rule 5(a) of the Federal Rules of Criminal Procedure, and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), precluded the admission into evidence of his incriminating statements. Like his *Escobedo* theory, objection to the testimony of the officer was for the first time made here. It is, therefore, not prop-

---

16. 124 U.S.App.D.C. at 295, 364 F.2d at 688, quoting Smith v. United States, 118 U.S.App.D.C. 38, 41, 331 F.2d 784, 787 (1964) (en banc).

17. E. g., Mathies v. United States, 374 F.2d 312 (D.C.Cir.1967); Reed v. District of Columbia, D.C.App., 226 A.2d 581 (1967) affirmed per curiam order, U.S.

App.D.C. October 2, 1967; Wright v. United States, D.C.App., 224 A.2d 475 (1966).

18. This rule requires that an officer making an arrest under warrant "shall take the arrested person *without unnecessary delay* before a judge of [that] court."

erly before us for consideration.[19] Nevertheless, we have examined the record for some evidence to substantiate his claim that his confessions were a product of illegal detention arising from "unnecessary" delay in being brought before a judge or committing magistrate, and we find none. Upon arrest, appellant was transported to the precinct in a police cruiser by "as direct a route as possible;" he was advised of his constitutional rights; his statements were not made under duress but were voluntary and completely spontaneous and were therefore admissible. We are of the opinion that the *Mallory* rule affords no relief to appellant under the facts of this appeal.

### IV. *Sufficiency of the Evidence*

Appellant's final contention is that there was insufficient evidence to support any of his convictions. A thorough examination of the record convinces us this claim is without merit.

 On all three occasions there was ample evidence to establish the offenses of petit larceny beyond a reasonable doubt. On two of the occasions, he was identified as being present in the offices of the airlines at the times the losses occurred.[20] On the third occasion his fingerprints were found on the cash box, which could be explained only if appellant was the thief.[21]

The convictions for unlawful entry must also stand. In Bowman v. United States, D.C.App., 212 A.2d 610 (1965), we sustained a conviction for unlawful entry of a posted non-public area in Union Station, stating that any person who without lawful authority enters upon premises against the will of the lawful oc-

cupant after warning to keep off, either orally or by sign, violates § 22–3102. In McGloin v. United States, D.C.App., 232 A.2d 90 (1967), we held that even in a semi-public or public building one does not have a right to enter areas which are obviously not open to the public simply because there is no sign or warning forbidding entry as under such circumstances there is an implied warning not to enter. In the present cases, appellant was found in parts of the airlines' offices which were not open to the public and where he had no right to be, and his explanations for his presence were insufficient to prove his right to be there.

As we find no error affecting any substantial right, appellant's convictions are

Affirmed.

19. See White v. United States, 114 U.S. App.D.C. 238, 314 F.2d 243 (1962); Williams v. United States, 113 U.S.App. D.C. 7, 303 F.2d 772, cert. denied, 369 U.S. 875, 82 S.Ct. 1145, 8 L.Ed.2d 277 (1962), and cases cited therein.

20. Cf. Williams v. United States, 108 U.S. App.D.C. 384, 282 F.2d 867 (1960).

21. Compare Borum v. United States, 380 F.2d 590 (D.C.Cir. 1967); Hiet v. United States, 124 U.S.App.D.C. 313, 365 F.2d 504 (1966), with Stevenson v. United States, 380 F.2d 595 (D.C.Cir. 1967).