**UNITED STATES, Appellant,**

v.

**Harold Leonard KRAMER, Appellee.**

**No. 5776.**

District of Columbia Court of Appeals.

Argued Sept. 29, 1971.

Decided Feb. 1, 1972.

Robert S. Tignor, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief, for appellant.

Wiley A. Branton, with whom Verginald L. Dolphin, Washington, D. C., was on the brief, for appellee.

Before GALLAGHER, PAIR and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge.

Appellee, a Montgomery County, Maryland police officer, was charged[1] by information on October 20, 1970, with negligent homicide[2] stemming from the allegedly negligent operation of a motor vehicle while pursuing a hit-and-run driver into the District of Columbia on February 16, 1970. This appeal is from an order dismissing the information on the ground appellee had been denied a speedy trial within the meaning of the sixth amendment. He had also argued in the alternative that by virtue of the delay he had been denied

---

1. Appellee was also charged that day by the Corporation Counsel of the District of Columbia with five counts of traffic violations stemming from the accident.

2. D.C.Code 1967, § 40–606.

due process under the fifth amendment, and in his brief on appeal suggested, "[a]dditionally the Court had the authority to dismiss the information pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure", which is identical to Rule 48 (b) of the Criminal Rules of the Superior Court.

In view of the trial court's ruling and our holding here we must review the sequence of events from the date of the offense to date of trial.

On March 16, 1970, appellee was notified by the Corporation Counsel's Office that it was going to prefer charges against him and asked that he contact that office in order that a mutually agreeable trial date might be set. It does not appear that he responded to that suggestion at that time. In early October 1970 the United States Attorney's Office sent a letter to appellee's counsel requesting that appellee appear for arraignment on October 13, 1970.[3] However, for reasons that are not clear on the record, appellee's counsel asked for a postponement. On October 20 when appellee appeared for araignment, he asked to be tried in December and his trial was scheduled for December 14, 1970. On December 4 the Government by motion requested that the case be specially assigned to a judge for trial in the interest of "maximum judicial efficiency" but it was denied.

A continuance of three days, to December 17, was granted at the Government's request with the consent of the appellee. On December 16 appellee requested, with the approval of the Government, that his trial, set for the following day, be continued to January 14, 1971. This request was granted and on January 14 both parties were ready to proceed to trial. Because of a lack of available judges, however, the case was continued to February 9, 1971. On January 22 the Government asked for reconsideration of its motion that the case be specially assigned for trial, but it was again denied. On February 9 counsel for the Government[4] announced that it was ready for trial. However, before the trial could commence, and without even indicating whether he was ready for trial, appellee's counsel moved orally to dismiss all the charges because of the delay from date of the offense to trial.[5] The trial court granted appellee's motion and dismissed the negligent homicide charge for lack of a speedy trial. As to the traffic charges, however, the court took the motion under advisement until March 24 when the motion was denied. However, on the trial date, March 29, the court dismissed the traffic charges with prejudice for want of prosecution after the government moved for an indefinite continuance, which was overruled, indicated a determination not to try these charges until after the negligent homicide case was tried, and suggested it was prepared to enter a nolle prosequi.

Administrative proceedings in Montgomery County were begun against appellee on February 25, 1970, when he was suspended from his position as a police officer by the County Manager; he was also reduced in rank and pay and put back six months on the promotion list. His appeal to the Maryland Board of Appeals was con-

3. The prosecutor represented to the court that the police officer who had conducted the on-scene investigation had resigned and moved to Texas on March 21, 1970 but returned in the latter part of July. Upon learning in August of the officer's return, arrangements were made to proceed with the arraignment.

4. The Corporation Counsel's Office also was present to represent the interests of the District of Columbia with regard to

its prosecution of the traffic charges which were similarly attacked by appellee's motion.

5. It is significant to note that counsel for appellee admitted during argument on the motion that an "essential witness" was not present and that he did not want to move for a continuance since it would prejudice his oral motion to dismiss for want of prosecution.

tinued at his request from May to September as he had not heard further from the Corporation Counsel's Office concerning the prosecution of their charges against him. The appeal proceeded in September and terminated in his favor in December when he was restored to his position with back pay even though his driving permit which had been suspended pending the outcome of the litigation on the traffic violations remained suspended.

The trial court found that the delay between February 16, the day of the offense, and October 13, the day on which appellee was scheduled to be arraigned, was the responsibility of the United States Government and that although not done in bad faith, the delay was "purposeful".[6] The court also made a finding that appellee as a police officer, was "more sensitive to criminal charges being held over his head than others" and that he had been "prejudiced" by the delay since there was a period of time when his status on the police force was jeopardized. There was no finding that the delay impaired his ability to defend himself.

The Government contends first that the sixth amendment right to a speedy trial applies only when there has been objectionable Government delay *following* arrest and arraignment and not to pre-arrest delays. It is argued and we agree, that most federal circuits look only to the time elapsed after the formal indictment or information since the period prior to that is controlled by the statute of limitations.[7]

Appellee relies principally on the premise that in this jurisdiction it has been asserted that the time from date of the offense to date the charges are brought may, in a proper case, be considered in conjunction with the time from the date formal charges are filed to the date of trial. United States v. Young, D.C.App.,

237 A.2d 542 (1968); Bond v. United States, D.C.App., 233 A.2d 506 (1967).

■ However, since we heard argument in this case the United States Supreme Court has made it clear that the speedy trial guarantee of the sixth amendment has no application until the prospective defendant becomes an accused. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (U.S. Dec. 20, 1971).

In that case the Supreme Court had under consideration the question of "whether dismissal of a federal indictment was constitutionally required by reason of a period of three years between the occurrence of the alleged criminal acts and the filing of the indictment." The defendants were not charged until more than three years after the Government obtained evidence that they had fraudulently operated a home improvement business.

The motion to dismiss for failure to promptly institute the prosecution was based on both fifth and sixth amendment grounds claiming a denial of due process and the right to a speedy trial. The comments of the Supreme Court on the latter issue in the *Marion* case are equally appropriate here and are dispositive of the sixth amendment issue as to any pre-trial delay. The Court said:

> . . . On its face, the protection of the amendment is activated only when a criminal prosecution has begun . . .

Later, the Court added:

> . . . [I]t is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engages the particular protections of speedy-trial provision of the Sixth Amendment.

---

6. The trial court relied largely on Bond v. United States, D.C.App., 233 A.2d 506 (1967).

7. Nickens v. United States, 116 U.S.App. D.C. 338, 323 F.2d 808 (1963), cert. denied, 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178 (1964).

The Court commenting further in a footnote said in part:

> . . . To recognize a general speedy trial right commencing as of the time arrest or charging was possible would have unfortunate consequences for the operation of the criminal justice system. Allowing inquiry into when the police could have arrested or when the prosecutor could have charged would raise difficult problems of proof. . . .

■ As indicated earlier, appellee on appeal has also raised a question as to the possible application of Rule 48(b) which provides:

> . . . If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

United States v. Marion, *supra,* made it crystal clear that delay from date of the offense to date the criminal prosecution was begun is not covered by Rule 48(b). *Also see* Foley v. United States, 290 F.2d 562, 565 (8th Cir.), cert. denied, 368 U.S. 888, 82 S.Ct. 139, 7 L.Ed.2d 88 (1961).

■ Turning to the proceedings following appellee's arraignment, we find no undue delay. Only four months elapsed from the date appellee was charged to the date of trial when the motion to dismiss was granted. There is no showing on the record that the Government was not prepared to go to trial on December 17, as it had indicated it would be. The record reveals that the Government was fully prepared to go to trial with witnesses present from out of town on January 14. The Government again reported ready for trial with witnesses present on February 9 when appellee's oral motion for dismissal was granted. Further, it appears that while he never specifically asked for a speedy trial, as some cases suggest he should,[8] he did ask (in October) to be tried in December. However, on December 14 he agreed to a requested three-day continuance on the part of the Government and when that expired he himself moved for a further continuance to January 14. Without deciding, as some cases have,[9] that a request for a continuance waives the right to claim a denial of speedy trial based on prior delays, we would observe that it is difficult to find that one has been prejudiced by delay who later finds it expedient or desirable to request a three-week continuance of the trial date.

■ However, it has been held that an unreasonable delay in charging a defendant, even if within the period of the statute of limitations may be assessed in light of the due process requirements of the fifth amendment where the defendant's ability to defend himself has been impaired.[10]

Whatever adverse consequences may have befallen appellee by virtue of the delay in the charges being filed against him, none of significance is apparent in this record. His suspension from his position occurred shortly after the accident and was the direct result of the accident rather than of the preferring of criminal charges which did not occur until some months later. His restoration to duty with com-

---

8. Bond v. United States, *supra*, 233 A.2d at 512; Harlow v. United States, 301 F.2d 361 (5th Cir.), cert. denied, 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56 (1962); d'Aquino v. United States, 192 F.2d 338 (9th Cir. 1951), cert. denied, Iva Ikuko Toguri D'Aquino v. United States, 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343 (1952); Annot., 57 A.L.R.2d 302, 326 (1958).

9. Gerardino v. People of Porto Rico, 29 F.2d 517 (1st Cir. 1928); d'Aquino v. United States, *supra;* Annot., 57 A.L.R. 2d 302, 309, 321 (1958).

10. *Also see* United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (U.S. Dec. 20, 1971); Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965).

plete back pay occurred in December despite the fact that criminal charges had been filed in October.

Having been suspended in February from his position as a police officer and notified in March by District of Columbia authorities that charges would be preferred against him, he must have been aware from the beginning that he would be well advised to be prepared to defend himself. Indeed there is no claim of surprise or of loss of memory during the intervening months, nor is there any showing that appellee has been deprived of any witnesses or other evidence by the pre-arraignment delay.[11] There was no showing, and not even a claim was made that appellee's ability to defend himself had been impaired.

In disposing of the appellees' argument in United States v. Marion, *supra*, that they had been denied due process, the Supreme Court made it clear that the result hinges on whether actual prejudice was caused the defendant. The Court said:

. . . Nor have appellees adequately demonstrated that the pre-indictment delay by the Government violated the Due Process Clause. No actual prejudice to the conduct of the defense is alleged or proven, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them. Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence lost. . . . Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.

While the trial court found the delay in charging appellee to be "purposeful" it also found it was not done in bad faith. Certainly the delay here does not fall within the category of deliberate stalling or of harassment. In our view, neither the time elapsed from charging to trial date, nor the overall time from date of the offense to trial date is sufficient, under these circumstances, to amount to a denial of due process absent a showing of meaningful prejudice by appellee.

Accordingly, the order dismissing this case is reversed with instructions to reinstate the information.

Reversed with instructions.

---

11. United States v. Moss, 141 U.S.App.D.C. 306, 308, 438 F.2d 147, 149 (1970).