Cosmopolitan were involved in the federal system.

UNITED STATES of America,
Appellant-Cross-Appellee,

v.

Charles JONES, a/k/a "Coffee", Marshall J. Muhammad, a/k/a "Marshall Jones", Raymond Piacente, Defendants-Appellees Cross-Appellants.

Nos. 605, 454, 515 and 516, Dockets 84–1230 and 84–1258 to 84–1260.

United States Court of Appeals, Second Circuit.

Argued Dec. 18, 1984.

Decided May 28, 1985.

Michael P. Stokamer, New York City, for defendant-appellee-cross-appellant Charles Jones.

Edward S. Panzer, New York City, for defendant-cross-appellant Raymond Piacente.

Ralph Naden, New York City (Donald E. Nawi, New York City, of counsel), for defendant-cross-appellant Marshall J. Muhammad.

David S. Hammer, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani,

U.S. Atty., S.D.N.Y., Stuart Abrams, Stacey J. Moritz, Asst. U.S. Attys., New York City, of counsel), for appellant-cross-appellee United States of America.

Before MESKILL, KEARSE and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Three appellants are before us as a result of their convictions arising from their involvement over several years in the illegal distribution of a huge amount of drugs by forged prescriptions. After the jury returned a guilty verdict on a multicount indictment against one of the appellants, the trial court set aside the verdict as to one count, which prompted the government's appeal. The resolution of the appeals from the judgments of convictions against appellants is relatively straightforward. What sets this case apart are the problems raised by the government's appeal.

The confusion began when the district court charged the jury that conspiracy violations and substantive violations attributed to a defendant because of his membership in a conspiracy could not be considered as predicate offenses to support a conviction for operating a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1982). As our recent decision in *United States v. Young*, 745 F.2d 733 (2d Cir. 1984), makes clear, this charge was erroneous. Further, the jury was also directed to return with its verdict answers to certain written interrogatories. With this cautionary stroke, the district judge enabled us to know on what factual basis the jury reached its verdict. Such knowledge is crucial on this appeal because the jury found appellant guilty of those offenses that—despite the trial judge's charge to the contrary—we held may constitute predicates for a § 848 violation.

This is not therefore a case in which a jury possibly came to its result for an impermissible reason, but rather a situation in which a jury's sustainable verdict was reached after it acted in disregard of a legally incorrect charge. That is, this is the rare case in which two wrongs do make a right. For us to affirm the setting aside of the conviction—in light of abundant evidence of guilt—would simply compound the wrong. Hence, we reverse the district court's order and reinstate the guilty verdict.

I

PROCEEDINGS BELOW

Marshall J. Muhammad, Charles Jones, and Raymond Piacente appeal from judgments of conviction after a jury trial in the United States District Court for the Southern District of New York (Lowe, J.). The jury found Muhammad guilty of various narcotics offenses through his arranging the sale, in drugstores with which he was affiliated, of pharmaceutical drugs without the prescriptions required by law. He was convicted of four counts of distribution of narcotics in violation of 21 U.S.C. § 841, conspiracy to violate the narcotics laws of the United States in violation of 21 U.S.C. § 846, and operating a continuing criminal enterprise in violation of 21 U.S.C. § 848. The jury found appellants Jones and Piacente guilty under § 846 of a conspiracy to violate the narcotics laws. Jones was also convicted of four substantive narcotics violations under § 841, and operating a continuing criminal enterprise under § 848.

Appellants raise a number of claims, only two of which require discussion. All of the appellants argue that the district court erred by allowing the government on its direct examination to refer to the truth-telling provisions of the witnesses' signed cooperation agreements. Jones and Piacente also claim that the presence of two alternate jurors at the onset of the jury deliberations requires reversal of their convictions. The government has appealed contending that the district court erred in setting aside Jones' conviction on the § 848 charge.

II

FACTS

The government's proof at trial established that between 1976 and 1983 massive

amounts of prescription drugs were being dispensed without prescriptions or with forged prescriptions from the Harlem Community Pharmacy (Harlem Pharmacy) in Manhattan and the Liotta, Brownsville, and Established Pharmacies in Brooklyn. The government also proved that prescription drugs ordered for the Greenleaf Clinic in Queens were being diverted to the Harlem Pharmacy. The jury found that Muhammad, Jones, and Piacente were all involved in this illegal drug distribution scheme. Muhammad owned the Harlem Pharmacy and at some time was owner or part owner of the other pharmacies. His office was at the Harlem Pharmacy where he managed the pharmacy section. He also owned the Greenleaf Clinic. Jones managed the nonpharmacy section of the Harlem Pharmacy from 1977 to 1979, and later managed the Liotta Pharmacy. He was also part owner of the Brownsville and Established Pharmacies. Piacente managed the nonpharmacy section of the Liotta Pharmacy.

One of the government's witnesses at trial was James Stephenson, a United States Drug Enforcement Agent, who testified with respect to audits of the pharmacies and the clinic. His testimony demonstrated that purchases of controlled substances were not balanced by prescription sales, with purchases exceeding sales by a ratio of ten to one. In addition, several unindicted co-conspirators testified for the government. Jean-Marie Joseph was the supervising pharmacist at Harlem Pharmacy in 1977, later he worked part-time at Liotta and Brownsville, and was part owner of Established where he also worked as a pharmacist. Joseph worked at Harlem Pharmacy at a time when Charles Jones managed the nonpharmacy section. Joseph testified that he and others sold controlled substances under forged prescriptions and that Jones gave him blank prescription pads and asked him to forge prescriptions at home. According to Joseph, Jones paid him for the forged prescriptions he produced, which Jones then stored in a box. He testified that the same pattern occurred at the Liotta and Established Pharmacies. Finally, Joseph testified that Muhammad of-

ten pressed him to increase both his ordering of narcotics from the wholesalers and his illegal sale and distribution of those drugs at the pharmacies.

Evelyn Dorval, a licensed pharmacist who worked at the Liotta Pharmacy, testified that Jones and Piacente sold controlled substances in the back room. Juanita Solas, who also worked at the Liotta Pharmacy, testified to her own and Jones' and Piacente's involvement in the sale of controlled substances. Frederick Ibitoye stated that he had written prescriptions at Liotta Pharmacy at Jones' and Piacente's request. Herman Fleming, a clerk and stockboy at Harlem Pharmacy, asserted that Muhammad and Jones sold drugs illegally there. Fleming also testified that he picked up packages of controlled substances from the Liotta and Brownsville Pharmacies and brought them to the Harlem Pharmacy. Cathy Jo Wilton, administrator of the Greenleaf Clinic and an indicted co-conspirator, testified that she ordered prescription narcotics for the clinic and delivered them to Muhammad at the Harlem Pharmacy. Wilton also testified that she forged prescriptions at Muhammad's request and that he supplied her with a model prescription form and blank prescription pads.

All of the above witnesses, except the DEA agent and the stockboy at Harlem Pharmacy, testified pursuant to cooperation agreements with the government. At trial these witnesses testified on direct examination regarding the portion of the cooperation agreement that required them to testify truthfully.

Shortly before the district judge charged the jury, defense counsel requested that the alternate jurors not be discharged. One of the regular jurors had indicated that she might have to leave early, and defense counsel indicated that they wanted to facilitate her substitution in that event. Appellants' counsel urged the trial court to allow two or three alternate jurors to be present during deliberations. Upon being assured that this was the choice of all the appellants, the trial judge granted this re-

quest. At the end of her charge, Judge Lowe instructed two of the alternate jurors to sit and listen to the jury's deliberations. She emphasized that although the alternates could be present, they were not to participate.

Less than two hours after the jury had retired, the government's attorney informed the court that research had revealed that alternates should not be present in a jury room during deliberations. Judge Lowe promptly recalled the jury and discharged the two alternates. At that time the court asked them whether they had participated in the deliberations. One alternate said they had not; the other was ambivalent. The trial judge then instructed the regular jurors to begin their deliberations anew and to disregard all discussions that had been held up to that point. The jury deliberated for another 14 hours before reaching its verdicts.

The district court had directed the jury to return a special verdict on Charles Jones' continuing criminal enterprise charge, 21 U.S.C. § 848. The jury was requested, among other things, to identify the three predicate narcotics violations necessary to support a § 848 conviction. When the jury returned a guilty verdict on the continuing criminal enterprise charge against Jones, the district court set that verdict aside and entered a judgment of acquittal because it concluded that the jury had improperly relied on § 846 narcotics conspiracy violations as predicate offenses for the § 848 conviction.

### III

#### DEFENDANT'S ARGUMENTS

A. *The Truth-Telling Provisions of the Cooperation Agreements*

■ The defendants complain that by eliciting testimony about the truth-telling portions of the witnesses' cooperation agreements the government improperly bolstered the witnesses' credibility and prejudiced defendants. Absent an attack on a witness' veracity, no evidence is admissible to bolster his credibility. *See* Fed.

R.Evid. 608(a)(2); C. McCormick, *Law of Evidence* § 49 (2d ed. 1972). Ordinarily the government may not elicit evidence of truth-telling portions of cooperation agreements on direct examination. *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1146 (2d Cir.), *cert. denied*, 439 U.S. 913, 1005, 99 S.Ct. 285, 618, 58 L.Ed.2d 260, 681 (1978) and 439 U.S. 1131, 99 S.Ct. 1052, 59 L.Ed.2d 93 (1979). We held in *United States v. Maniego*, 710 F.2d 24, 27 (2d Cir.1983) (per curiam), that as Fed.R.Evid. 608(a)(2) allows admission of credibility testimony "only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise," such evidence is admissible on direct only if the witness' credibility was attacked in the opening argument. Here defense counsel attacked the credibility of the government's witnesses in their opening arguments.

■ Defense counsel questioned the motives of the government witnesses and commented on their immunity status by stating that it meant they have committed "many crimes, and they are not going to be prosecuted." Reference was further made in the opening to the fact that one of the government witnesses had previously committed perjury. The jury had to ask itself, another defense counsel said, whether the government witnesses they heard had "made a deal to save their own hide." Since these opening statements by defense counsel attacked the credibility of the government witnesses, appellants may not be heard to complain at their rehabilitation on direct examination.

B. *Presence of Alternate Jurors During Deliberations*

■ Jones and Piacente assert that the presence of the two alternate jurors in the jury room for about an hour and a half deprived them of a fair trial. Federal Rules of Criminal Procedure 24(c) states: "An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." Unquestionably, by not discharging the two

alternate jurors and allowing them to sit at the beginning of the jury's deliberations, the district court violated this rule. This mandatory rule is one that trial courts should carefully observe because of the potential for an unfair trial. When alternate jurors are present during deliberations, the possible prejudice is that the defendants are being tried not by a jury of 12, as is their right, but by a larger group. *See United States v. Hayutin,* 398 F.2d 944, 951 (2d Cir.), *cert. denied,* 393 U.S. 961, 89 S.Ct. 400, 21 L.Ed.2d 374 (1968); *United States v. Allison,* 481 F.2d 468, 470 (5th Cir.), *aff'd after remand,* 487 F.2d 339 (5th Cir.1973), *cert. denied,* 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759 (1974).

Recently, in *United States v. Hillard,* 701 F.2d 1052 (2d Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983), we held that "a violation of Rule 24(c) does not require reversal per se, absent a showing of prejudice." 701 F.2d at 1058. In *Hillard* we refused to reverse a conviction when the trial judge substituted an alternate juror for a regular juror who became ill after deliberations had begun. The alternate juror had reaffirmed his ability to consider evidence and to deliberate fully and fairly and indicated that his discussions with the other alternate had not changed in any way his view of the case. Further, the trial judge there instructed the jurors to begin their deliberations over again after the alternate joined them. Because of the district court's painstaking efforts to minimize potential prejudice to defendants and its determination that there had in fact been no such prejudice, we found that the violation of Rule 24(c) did not constitute reversible error. 701 F.2d at 1061; *see also United States v. Mahler,* 579 F.2d 730, 737 (2d Cir.), *cert. denied,* 439 U.S. 872, 991, 99 S.Ct. 205, 592, 58 L.Ed.2d 184, 666 (1978).

 Although *Hillard* was decided on somewhat different facts, its holding that a Rule 24(c) violation does not require reversal absent a showing of prejudice applies here. Hence, in order to determine whether a Rule 24(c) violation mandates a new trial, there must be an analysis of the facts and circumstances at trial. Some factors that should be considered are: (1) whether defendants requested or consented to the alternates' presence in the jury room; (2) how long the alternates were present; (3) whether the alternates participated in the deliberations; (4) what instruction the trial judge gave before the alternates retired with the regular jurors; (5) what the alternates' statements subsequently revealed; (6) what curative instructions were given by the trial court to the "reconstituted" jury, i.e., the body without the alternates. An evidentiary hearing should be held where necessary for an evaluation of these factors. *See Allison,* 481 F.2d at 472.

 Here, when the trial court sent the regular jurors out to deliberate and allowed the alternates to accompany them, it specifically instructed the alternates not to participate. The alternates were with the jury for less than two hours. When the alternates were withdrawn and questioned as to whether they had participated and one answered somewhat ambiguously, the trial court called all of the regular jurors before it and instructed that their deliberations must start again from the beginning and they were to disregard any possible participation by the alternates. The jury thereafter deliberated for 14 hours before reaching a verdict. These factors demonstrate the lack of prejudice present in this case. The brief presence of the alternates was at defendants' request. The trial court instructed the alternates not to participate, but only to sit and listen, and there was a lack of evidence that they had participated. The trial judge gave the reconstituted jury a curative instruction to start its work over again, and the ensuing 14 hours of deliberations before a verdict was reached indicates that whatever possible taint might have crept into the deliberations was effectively removed. Moreover, defendants' counsel, hoping to avoid a mistrial, argued below that inclusion of the alternates would not be reversible error because defendants had requested that course. The fact that defendants them-

selves believed that no harm resulted from the alternates' presence is further proof of a lack of prejudice. Defense counsel requests, which are granted by a trial court, are frequently raised as a claim of error on appeal. We look with disfavor on this trial tactic. *United States v. Ferguson,* 758 F.2d 843, 851–52 (2d Cir.1985) (conviction affirmed when defendants over government objection expressly requested trial court to charge a lesser crime, one for which defendants had not been indicted); *United States v. Young,* 745 F.2d 733, 752 (2d Cir.1984) (conviction affirmed despite plain error in jury charge, when that charge was invited by defendant). We hold therefore that the brief presence of alternate jurors during deliberations did not deprive Jones and Piacente of a fair trial.

## IV

### GOVERNMENT'S APPEAL

■ Section 848 provides that to have engaged in a continuing criminal enterprise a defendant must have "violate[d] any provision of [Subchapters I or II of Chapter 13 of Title 21]," § 848(b)(1), and such violation must be part of "a continuing series of violations [of Subchapters I or II of Chapter 13 of Title 21]," § 848(b)(2). Further, such violations must be undertaken "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management," § 848(b)(2)(A). When considering her instructions on defendant Jones' § 848 continuing criminal enterprise charge, the district judge was concerned that the jury would use as predicate acts either § 846 narcotics conspiracy violations or § 841 substantive narcotics violations that Jones himself did not commit, but of which he was guilty because of his involvement in the conspiracy, *see Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). The district court believed that because of the § 848(b)(2)(A) "in concert" requirement, conspiracy was a lesser included offense of the continuing criminal enterprise count

and, therefore, could not properly be used as one of the § 848(b)(1) predicate acts.

*Pinkerton* was the only theory of Jones' liability submitted to the jury on the four substantive counts in the indictment. The only other offense, other than the § 848 continuing criminal enterprise, with which Jones was charged was a § 846 conspiracy. Although there was evidence of substantive narcotics violations by Jones, those violations were not included in the indictment because they occurred outside of the Southern District. The trial court therefore instructed the jury that it could not consider any of the counts in the indictment as predicate violations for a § 848 conviction against Jones. To ensure that it followed her instructions the district judge asked the jury to complete a set of interrogatories. The jury had to list: (a) the three violations of narcotics laws that it found had been proven beyond a reasonable doubt, including "the violation, the pharmacy at which it took place, and the year it took place"; (b) the five persons that it found that Charles Jones organized, supervised or managed; and (c) the names of any pharmacies to be forfeited.

The jury returned verdicts convicting Jones on all six counts of the indictment. In response to Judge Lowe's first interrogatory on Count Six, the § 848 charge, the jury identified the three predicate violations and the places and times at which they were committed as follows:

1. Jan. 1, 1978–Dec. 31, 1978
 Harlem Community Pharmacy
 Title 21 U.S.Code Sec. 846
2. Jan. 1, 1979–Dec. 31, 1979
 Harlem Community Pharmacy
 Title 21 U.S.Code Sec. 846
3. Jan. 1, 1980–Dec. 31, 1980
 Harlem Community Pharmacy
 Title 21 U.S.Code Sec. 846

Based on these answers, Judge Lowe granted Jones' request for a judgment of acquittal on the continuing criminal enterprise charge.

In *Young,* decided after the trial of the instant case, we held that "a lesser includ-

ed § 846 conspiracy may serve as a predicate offense for a § 848 continuing criminal enterprise." 745 F.2d at 751–52. We found the statutory language unambiguous: "Section 848(a)(1) provides that *any* felony violation of Subchapters I and II of Chapter 13 of Title 21 is an eligible predicate." *Id.* at 750 (emphasis in original). Similar reasoning applies to a § 841 substantive violation of which defendant is guilty on a *Pinkerton* theory. This, too, is a violation of a provision of Subchapters I or II of Chapter 13 of Title 21, and as such is an eligible predicate. There is, therefore, no question that the district judge incorrectly instructed the jury not to consider § 846 violations or § 841 violations as predicate violations on a *Pinkerton* theory.

The fact that the district court made a legal error does not end the matter. The circumstances of the instructions and the verdict on Jones' § 848 count are far from clear. Whether the government objected to the district court's incorrect instructions is the first question. Although the government apparently agreed that the § 846 count not be used as a predicate, it did not acquiesce to the court's charge that substantive § 841 *Pinkerton* counts could not be predicates.[1] Another example of some confusion is the jury's response on the special verdict form as to which predicate violations it found Jones guilty. The statute that the jury indicated Jones violated was § 846, the narcotics conspiracy law. Yet, the words the jury used tracked exactly the indictment on the § 841 substantive counts for which Jones was found guilty on a *Pinkerton* theory. The parties agreed, both at the time of trial and on this appeal, that the form of the jury's answer indicates that it was referring to Jones' *Pinkerton*-based § 841 substantive narcotics violations, not the § 846 conspiracy. Understandably, little attempt was made by the district court to resolve this ambiguity since, according to its earlier jury instructions, it believed that neither offense was a proper predicate for a § 848 violation. The

dissenting opinion expresses doubts about whether the jury was actually referring to § 841 violations. We see no reason to question a conclusion about which two adverse parties, both of whom were present at trial, have agreed.

In sum, the district court incorrectly instructed the jury that none of the charges in Charles Jones' indictment could be predicate violations for the § 848 charge. Nonetheless the jury properly using substantive *Pinkerton* counts as predicate violations, convicted Jones of operating a continuing criminal enterprise. Thus, the fact-finding body found that all of the necessary factual elements of a § 848 violation existed: it found that Jones committed three predicate felony violations; that he acted in concert with five or more persons with respect to whom he occupied a supervisory position; and that he obtained substantial income from these activities. The district judge set aside the verdict not because of a lack of proof of sufficient facts to sustain the conviction, but because of what it incorrectly perceived to be a legal deficiency.

As the only error is one of law, we may correct it if, in so doing, we do not put Jones in jeopardy again for the same offense. So long as there is a jury verdict of guilt, an appellate court may correct errors of law without subjecting a defendant to any constitutional deprivation. *See United States v. Zisblatt*, 172 F.2d 740, 743 (2d Cir.) (L. Hand, J.), *appeal dismissed on the government's motion*, 336 U.S. 934, 69 S.Ct. 750, 93 L.Ed. 1093 (1949). Simply by reinstating the jury's verdict, we can correct the district court's legal error. The reinstatement of that verdict does not violate Jones' double jeopardy rights since he will not be subjected to a second trial for the same offense. When a guilty verdict is reinstated, double jeopardy is not implicated. *See United States v. Wilson*, 420 U.S. 332, 352–53, 95 S.Ct. 1013, 1026–27, 43 L.Ed.2d 232 (1975).

---

1. The trial transcript reveals a lengthy discussion between the government attorneys and the trial court on the relationship of the § 848 charge and the *Pinkerton* counts. While not all

of that discussion concerned use of the *Pinkerton* counts as predicates, the government did, at least on one occasion, urge, citing authority, that *Pinkerton* counts were proper predicates.

Accordingly the judgments of conviction are affirmed. The judgment of acquittal for defendant Jones on Count Six, the 21 U.S.C. § 848 charge, is reversed and the jury's verdict is reinstated. The case is remanded to the district court for resentencing.

KEARSE, Circuit Judge, dissenting in part:

I concur in so much of the majority's ruling as upholds the judgments of conviction entered against each of the defendants, but I respectfully dissent from the reinstatement of the verdict against Jones for violation of 21 U.S.C. § 848 (1982). The majority finds that the trial judge made one error, that the jury made another, and that these two errors offset one another, thus validating the jury's verdict against Jones on the § 848 count. Even if it were appropriate to conclude that "[here] two wrongs do make a right," Majority Opinion *ante* at 520, in my view, the record reflects not two but at least three errors, and I see no reason to believe that the jury's verdict was not the product of confusion.

Jones was indicted on six counts. Count 1 charged him with having conspired from January 1976 to December 1983 to violate the narcotics laws, in violation of 21 U.S.C. § 846 (1982); counts 2 through 5 charged him with substantive crimes of possession of controlled substances, in violation of 21 U.S.C. § 841 (1982); and count 6 charged him with having engaged in a continuing criminal enterprise, in violation of 21 U.S.C. § 848. The government sought to establish Jones's liability for the substantive offenses under the *Pinkerton* doctrine, *Pinkerton v. United States*, 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946), whereby a coconspirator who does not directly commit a substantive offense is liable for that substantive offense if it was committed by another coconspirator in furtherance of the conspiracy.

1. *The Trial Court's Error*

Section 848(a) provides severe penalties for a person convicted of engaging in "a continuing criminal enterprise," which is defined in § 848(b) as violation of a felony provision of the narcotics laws where "such violation is a part of a continuing series of [such narcotics] violations" undertaken "in concert with five or more other persons" whom the defendant has organized, supervised, or managed, and from which the defendant has obtained substantial income or resources. The term "continuing series of violations" has been interpreted to require proof of three or more separate felony violations of the narcotics laws. *See, e.g., United States v. Young*, 745 F.2d 733, 747 (2d Cir.1984), and cases cited therein, *cert. denied*, —— U.S. ——, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *United States v. Losada*, 674 F.2d 167, 174 (2d Cir.), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). In instructing the jury as to the elements of a § 848 offense, the trial judge told the jury that, in order to convict, it must find three separate narcotics violations but that it could not use for this purpose a conspiracy in violation of § 846 or any of the substantive § 841 offenses alleged in counts 2–5 (the *Pinkerton* counts).

I agree with the majority that, in light of *United States v. Young*, decided some months after the conclusion of the trial in the present case, the trial court's instruction to the jury not to consider a § 846 conspiracy as a predicate violation for purposes of § 848 liability was erroneous. It is clear, however, that the jury disobeyed this instruction.

2. *The Jury's First Error*

Having been given a special verdict form on which to enter its findings as to the nature, places, and dates of Jones's three separate narcotics violations upon which a verdict of his guilt on the continuing criminal enterprise count was predicated, the jury listed three predicate violations as follows:

1. Jan. 1, 1978–Dec. 31, 1978
 Harlem Community Pharmacy
 Title 21 U.S.Code Sec. 846
2. Jan. 1, 1979–Dec. 31, 1979
 Harlem Community Pharmacy

Title 21 U.S.Code Sec. 846

3. Jan. 1, 1980–Dec. 31, 1980
Harlem Community Pharmacy
Title 21 U.S.Code Sec. 846

Counsel for both sides interpreted the three offenses listed as referring to the *Pinkerton* § 841 offenses charged in counts 2–4, even though the jury cited § 846 as the provision violated. Perhaps this interpretation was based on the jury's choice of dates listed, which matched the time periods alleged in counts 2–4; however, those dates also appeared in count 1, which charged a § 846 conspiracy, and Harlem Community Pharmacy is expressly mentioned only in count 1, not in any of the *Pinkerton* counts. Regardless, however, of whether it used conspiracy or the *Pinkerton* substantive offenses as its § 848 predicates, the jury clearly disobeyed the trial court's instructions, for it had been instructed that it could use neither type of offense as § 848 predicates.

The majority concludes that since the trial court's instruction was erroneous and the jury disobeyed that instruction, the verdict is valid. The soundness of this proposition is not clear to me. When the jury is given proper instructions and returns a general verdict, we assume that the jury has deliberated in accordance with the instructions it has received; and if there is any rational basis on which it could have arrived at its verdict within the legal framework it was given, we assume that is the basis on which it has operated. When, however, the jury returns a special verdict that clearly reveals that it has disobeyed the court's instructions, we have no way of knowing (regardless of whether those instructions were correct or erroneous) within what legal framework the jury made its decision. It is inappropriate to assume that a "lay jury will *know enough* to disregard the judge's bad law if in fact he misguides them. To do so would transfer to the jury the judge's function in giving the law and transfer to the appellate court the jury's function of measuring the evidence by appropriate legal yardsticks." *Bollenbach v. United States*, 326 U.S. 607, 613–14, 66

S.Ct. 402, 405–06, 90 L.Ed. 350 (1946) (emphasis added).

In the present case, we surely have no basis for thinking the jury was prescient as to how we would decide the *Young* case or that it had any belief that the trial court's instructions should not be followed. The reasonable inference is that the jury believed it was following the court's instructions, and the fact that it plainly did not suggests that the verdict was based on some misunderstanding. I am loath to reinstate a jury verdict of guilty that was the product of confusion.

3. *The Jury's Second Error: Version One*

Even if it were logical to conclude that the court's erroneous instruction and the jury's disobedience were mutually offsetting errors, I would think it inappropriate to reinstate the verdict, for the jury's apparent misunderstanding of the court's instructions was not its only error. As indicated above, the language of the jury's special verdict bespoke additional confusion as to whether the jury had intended to list conspiracy offenses or *Pinkerton* offenses as the three predicate acts. The parties appear to agree that the jury intended to cite § 841 and to find as predicate acts the *Pinkerton* offenses charged in counts 2–4 of the indictment. If the parties are correct, the jury's error in citing § 846 rather than § 841 as the section violated in these predicate offenses—to which, as discussed below, it adhered after questioning by the court—is further proof of the jury's confusion in its consideration of the § 848 count.

4. *The Jury's Second Error: Version Two*

Finally, it is hardly clear to me that we should accept the parties' interpretation of the jury's verdict as merely citing the wrong statutory section. As set forth in Part 1 above, every word of the jury's specification of predicate offenses is part of count 1 of the indictment, the § 846 count. Further, when the verdict was returned and the government's attorney sug-

528

gested that there was some apparent confusion in the jury's listing of predicate offenses, the trial court immediately sought clarification. It asked the jury whether it really did intend to refer to § 846. The jury's foreperson responded in the affirmative:

THE COURT: Members of the jury, I should address this to the foreperson. As to the defendant Charles Jones under Count 6, the finding of guilty, you have with you the indictment and my charge. When you cite the three crimes, Title 21 United States Code 846, that is exactly what you intended to put; is that correct?

THE FORELADY: Yes, ma'am.

Thus, notwithstanding counsel's view that the jury intended to predicate § 848 liability on the § 841 *Pinkerton* counts, the jury affirmed that it had intended to find predicate offenses in violation of § 846. The trial court then found that the jury "mean[t] exactly what the verdict sa[id]."

While perhaps we might have greater confidence in the jury's affirmation if the trial court's question had been less leading, I do not believe this Court should so easily ignore either the section cited in the special verdict, or the jury's affirmation that it in fact intended to cite § 846, or the trial court's finding, after explicit inquiry, that the jury intended, to cite § 846. Rather, I think it more appropriate to assume that the jury's citation of § 846 as the section violated in the three predicate offenses did not misspeak its intention. This assumption, however, does not mean that the jury did not commit a second error, for it appears to me that the jury erred in finding three separate conspiracies as the necessary three predicate felony violations. Obviously in some cases there could be three separate conspiracies that could serve as such predicates, but in the present case, count 1 charged Jones with having engaged in a single conspiracy that included the entire period covered by the three separate offenses found in the special verdict. The jury, properly instructed by the court as to single vs. multiple conspiracies, found Jones guilty of that single conspiracy, and,

as the government's attorney stated after hearing the special verdict, "It seems very unlikely they thought there were separate conspiracies going on in those years."

Thus, it appears that the jury took a single conspiracy, of which it found Jones guilty under count 1, and carved out of it three precise one-year segments in order to find the three separate felony violations needed to support its § 848 verdict. There is a paucity of legislative history on § 848, but what little there is does not in any way suggest that Congress intended that the artificial segmentation of a single conspiracy into several should suffice to satisfy the requirement that there be a continuing "series" of violations.

CONCLUSION

We are asked to reinstate a verdict on a count as to which (1) the trial court instructed the jury erroneously, (2) the jury mistakenly disobeyed those instructions, and (3) the jury either (a) further erred in identifying (and confirming) the section under which it found predicate violations, or (b) further erred by segmenting a single conspiracy into three separate conspiracies in order to find three § 848 predicates. Deference that we give to jury verdicts on appeal is based on our evaluations of what a rational juror may make of the evidence, operating under instructions that are not erroneous or misleading. I am hard pressed to emerge from a review of this case with a clear sense that the jury's § 848 verdict against Jones was a reasoned one based on valid doctrine rather than the product of confusion. I therefore would not reinstate the verdict against Jones on count 6.