UNITED STATES of America, Appellee,

v.

**Roy FRANKHAUSER,**
**Defendant, Appellant.**

**Nos. 88–1323, 88–1415.**

United States Court of Appeals,
First Circuit.

Heard April 3, 1989.

Decided July 14, 1989.

William A. Brown, Boston, Mass., by Appointment of the Court, for defendant, appellant.

John J.E. Markham, II, Asst. U.S. Atty., with whom Jeremiah T. O'Sullivan, U.S. Atty., Boston, Mass., was on brief, for the U.S.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

A jury convicted appellant Roy Frankhauser of conspiring to obstruct justice, 18 U.S.C. §§ 371, 1503 (1982), for having suggested to members of Lyndon LaRouche's staff that they burn documents, send witnesses abroad, and refuse to turn over records to a Boston grand jury investigating possible credit card fraud. Originally, the government intended to try Frankhauser and several members of the LaRouche staff (indicted on various charges) together at a single trial. In late October 1987, however, after jury selection and just before the joint trial was to begin, the district court severed Frankhauser's case from the others and tried him first. Frankhauser now appeals from his conviction (and the court's later refusal to grant him a new trial). He argues that the court should not have severed his case from the others; that, if it did so, it should have continued his case giving his counsel more time to prepare; and that the government unlawfully failed to provide him with certain material he believes was "exculpatory." We find these arguments without merit and affirm his conviction.

■ 1. *Severance.* We have set forth many of the facts relevant to the severance of Frankhauser's trial in *United States v. LaRouche Campaign,* 866 F.2d 512, 516 (1st Cir.1989). They consist, essentially, of the following:

a. In May 1987 all defendants except Frankhauser asked the court to sever their case from that of Frankhauser. They argued that, by severing Frankhauser's case, the court would leave them free to call Frankhauser as a witness, a course of action that a single trial might make impossible (should Frankhauser not wish to testify). The court denied their request in part because it thought the other defendants had not shown "that Frankhauser would in fact testify ... if the cases were severed."

b. In October 1987, just as trial was about to begin, the other defendants again moved to sever Frankhauser's trial. This time one of the defendants argued that Frankhauser had promised to provide an affidavit denying that he had certain important conversations that the government claimed had taken place. Thus, the need for Frankhauser's testimony was more apparent. At the same time, the government explained how, were it to try and convict Frankhauser first, he might (through appropriate immunity grants) be required to testify.

c. At the same time, the court decided that it would permit other defendants to introduce into evidence at their trial Frankhauser's membership in the KKK and Nazi Party. This evidence would help other defendants, some of whom were Jewish, argue that Frankhauser had a reason to try to harm

them (perhaps, entrapping them, or lying about what he told them).

d. At this point Frankhauser's counsel himself asked for severance. Although he asked for several weeks to prepare for trial, he said,

"if your honor in his wisdom thinks that the joint membership in the KKK is so relevant to the issues in this case that it must come in, then I am saying sever me because I can't get a fair trial here."

e. The court then severed Frankhauser, setting his case for trial two weeks later, prior to that of the other defendants.

Given these circumstances it is clear that the district court's decision to sever Frankhauser's trial was not legally erroneous. For one thing, the district court might reasonably have believed that Frankhauser himself wished the severance. In that case, Frankhauser cannot later change his mind and claim the decision was erroneous. *See United States v. Jones,* 763 F.2d 518, 524 (2d Cir.), *cert. denied sub nom. Muhammad v. United States,* 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985); *United States v. Southard,* 700 F.2d 1, 16 (1st Cir.), *cert. denied sub nom. Ferris v. United States,* 464 U.S. 823, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). For another thing, even if we interpret counsel's remarks in context as *opposing* severance *unless* accompanied by a several-week continuance, the district court has broad legal power to determine when, and whether, a severance is appropriate. *See United States v. Arruda,* 715 F.2d 671, 679 (1st Cir.1983) (a trial court's decision on a severance motion will be reviewed for abuse of discretion and reversed only if defendant was deprived of a fair trial, resulting in a miscarriage of justice); *United States v. Davis,* 623 F.2d 188, 194 (1st Cir.1980). The considerations favoring severance, referred to above and in *United States v. LaRouche Campaign, supra,* when combined with the lawfulness of the continuance and trial scheduling that we shall discuss below, lead us to conclude that the district court did not abuse its broad power.

■ 2. *Continuance.* Frankhauser's more significant claim is that the district court, after severing his case, should not have proceeded so quickly to trial; it should have granted him a longer continuance allowing him more time to prepare. Frankhauser concedes that his trial began more than a year after his indictment. He was represented by experienced trial counsel. But, he points out that counsel *expected* him to be tried with several others at a trial that would likely last for several months, which would begin with presentation of facts related to "credit card" fraud (for which he had not been indicted), and that during that initial period, counsel (as counsel told the court) would "be sitting quietly ... reading the [200] notebooks [kept by LaRouche's staff] that" he had not "yet read in this case." That is to say, as of October 20, when the court granted the severance motion and scheduled Frankhauser's trial to begin two weeks later, Frankhauser's counsel *expected* he "would be putting on a defense in January or February," not in two weeks.

Nonetheless, in evaluating Frankhauser's argument on appeal, we must recognize that the power to schedule trials, like the power to sever, is one that the law primarily gives to the district court, not to this court. We have said that

... [b]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel. *Ungar v. Sarafite,* 376 U.S. 575, 589 [84 S.Ct. 841, 849, 11 L.Ed.2d 921] (1964).

*Tuitt v. Fair,* 822 F.2d 166, 172 (1st Cir. 1987) (quoting *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)), *cert. denied,* —— U.S. ——, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). *See also United States v. Bonilla–Romero,* 836 F.2d 39, 44 (1st Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988) (denial of a continuance by a district court will not be reversed absent a clear showing of abuse of discretion). And, applying this legal standard, we cannot say

that the district court's decisions were unlawful.

First, the court granted a two-week continuance, told counsel that it would consider any further requests for continuance as needed, and granted the single additional request for a continuance of several days that counsel made after the trial began. Second, the court set a trial schedule that permitted counsel time in the afternoons for added preparation. Indeed, the court tried the case on five mornings the week of November 2, on one morning the week of November 9, on four mornings the week of November 16, on one morning the week of November 24, and on five mornings the week of November 30. On December 9 the court heard summations, and the next day the case was submitted to the jury. Finally, the record indicates that counsel made full use of the fifteen LaRouche Campaign notebooks that contained relevant evidence. Despite the many months that have passed since the trial, Frankhauser can point to no specific information in any of the other notebooks (or to any other significant evidence) that counsel might have used had he had more time. Indeed, our examination of the record finds no support at all for Frankhauser's argument that lack of time to prepare made his counsel's representation "ineffective." *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (defendant must show counsel's performance "deficient" and that it "prejudiced his defense" in order to obtain reversal of conviction); *United States v. Palow,* 777 F.2d 52, 57 (1st Cir.1985), *cert. denied,* 475 U.S. 1052, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1986) (to obtain reversal on the basis of ineffective assistance of counsel, defendant must show reasonable probability that, but for counsel's unprofessional errors, the factfinder would have had a reasonable doubt respecting guilt).

These considerations, taken together, lead us to conclude that the severance and scheduling of the trial did not violate the law.

3. *Exculpatory material.* Frankhauser argues that the district court should have granted him a new trial because the government withheld "exculpatory" information, contrary to the legal obligations imposed by *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The information consists of two excerpts contained on tapes, which, Frankhauser concedes, the government made available to his counsel, but which the government described to counsel as being not of importance and not worth listening to.

The relevant portions of the tapes consist of a conversation between Robert Lee Fick, a former assistant to Frankhauser, and James Rosenberg, a person whom Fick believed able to contact Frankhauser. They state the following:

(a) Fick: I mean, I didn't know this thing was gonna get this far in Boston.
Rosenberg: Oh, yeah; it is, only because LaRouche's people are being assholes about it; I mean, they could have, they could have found some—
Fick: N—
Rosenberg: —way of getting out—
Fick: Yeah.
Rosenberg: —but they have been totally uncompromising.
Fick: Well, that's what we recommended to them how many times in the past—"Let's sit down and make a deal here; you know, compromise, like the Walter Mondale campaign did."

(b) Rosenberg: —is the Boston case, and they're taking that very seriously, about what (inaudible) mess it up.
Fick: What does Roy think about all that? He wasn't too deeply involved in the Boston (inaudible), but he was always lying to them, you know, about—
Rosenberg: Oh, yeah, yeah; he—
Fick: As usual.

*Brady,* of course, requires the government to make available only information that is "material." And, leaving aside the question of whether or not the government "withheld" information that it actually gave to defense counsel, we agree with the district court that the quoted selections

were not "material" to the defense. *United States v. Agurs*, 427 U.S. at 112, 96 S.Ct. at 2401–02 (omitted evidence is material if it creates a reasonable doubt that did not otherwise exist). The first selection might be read as showing that Fick and Frankhauser had recommended that the LaRouche organization settle its differences with the government, a position that one might believe inconsistent with an effort to "obstruct" the government's grand jury investigation of the credit card scheme. But, the fact that Frankhauser had recommended such a settlement was not contested at the trial. Fick testified at trial that Frankhauser had recommended settlement; so did other witnesses; and the government acknowledged this fact in its opening statement.

The second selection contains Fick's statement that Frankhauser "wasn't too deeply involved" in the Boston matter. But, even if this is read as meaning he was not too deeply involved in the conspiracy to obstruct justice, we do not see how the "depth" of one's involvement is relevant to the fact of participation in the conspiracy. At the least Frankhauser fails to point out to us, in any plausible way, how this statement could have tended to exculpate him in respect to the crime the government charged. *See, e.g., United States v. Guida*, 792 F.2d 1087, 1098 (11th Cir.1986) (it is not necessary to prove that a person charged with a conspiracy participated in every aspect of it); *United States v. Lee*, 743 F.2d 1240, 1250 (8th Cir.1984) (A defendant may be found guilty of a conspiracy even if he plays only a minor role in the conspiracy); *United States v. Clark*, 732 F.2d 1536, 1539–40 (11th Cir.1984) (same).

For these reasons, we can find no error in the district court's determinations and its judgment is

*Affirmed.*