**UNITED STATES of America,**
**Appellee,**

**v.**

**Benjamin INDIVIGLIO, Appellant.**

**No. 378, Docket 29404.**

United States Court of Appeals
Second Circuit.

Argued March 10, 1965.

Ordered to be reconsidered en banc
May 26, 1965.

Decided Oct. 28, 1965.

Jerome Lewis, Brooklyn, N. Y. (Thomas R. Newman, New York City, of counsel), for appellant.

Howard L. Jacobs, Asst. U. S. Atty., New York City (Robert M. Morgen-

Before LUMBARD, Chief Judge, and WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS and ANDERSON, Circuit Judges.

HAYS, Circuit Judge.

Defendant appeals from a judgment of conviction based on a jury verdict that he violated the bail-jumping statute, 18 U.S.C. § 3146 (1964).[1] His appeal was first heard by a panel of this court, but on May 26, 1965, we ordered that his appeal be reconsidered by the active judges *en banc* together with six other cases, all involving issues raised by Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

In his brief and argument appellant presses only one point—that his own post-indictment statement made to an agent of the Federal Bureau of Investigation when he was without counsel was erroneously introduced at his trial in violation of his rights under the rule of Massiah v. United States, supra.

We affirm on the ground that the failure to make proper objection before the trial court to the admission of the challenged evidence forecloses review of the asserted error.

Defendant was indicted on a narcotics charge and released on $20,000 bail. He failed to appear in court as directed on September 5 and 6, 1961, and his bail was held forfeited on September 7, 1961. He was indicted under the present charge of bail-jumping on June 29, 1962. At that time he was residing in Brazil. On May 24, 1964, defendant was arrested in Rio de Janeiro by Brazilian author-

1. "Whoever, having been admitted to bail for appearance before any * * * court of the United States, incurs a forfeiture of the bail and willfully fails to surrender himself within thirty days following the date of such forfeiture, shall, if the bail was given in connection with a charge of felony * * *, be fined not more than $5,000 or imprisoned not more than five years, or both * * *."

ities who charged him with illegal entry into Brazil. The next day he was placed on a plane for New York.

On May 26 defendant was arrested by FBI agents who were awaiting his arrival at the airport in New York. FBI Agent Torpey testified that he "approached Mr. Indiviglio, told him who I was and placed him under arrest * * * at the bottom of the stairs that lead off from the airplane." Agent Torpey also testified, "I advised him of the charges against him. I told him that he had a right not to say anything to me if he didn't want to and that he had a right to counsel." Continuing his testimony Torpey said that defendant told him something of his activities during his stay in Rio de Janeiro.[2] Torpey then went on:

"I, after advising Mr. Indiviglio what the charge was against him, I asked him why he jumped bail and he advised me that he had requested a severance from the defendants in the other case and he had been turned down and he did not desire to stand trial with these other men.

 *  *  *  *  *  *

"He asked me at one point if I had seen or heard from an attorney. He didn't identify the attorney. I told him no, I had not."

The agents took defendant to their Manhattan office, and he was brought before a United States Commissioner for a preliminary hearing.

Soon thereafter defendant secured the services of experienced counsel. His lawyer moved to suppress "as evidence all property obtained from and statements made by the defendant from the time of his arrest in Brazil until the time of his arraignment * * * on the ground that said property and statements were obtained during the course of an unlawful arrest, detention, search, seizure and interrogation * * *." This motion was labeled as brought under Rules 41(e) and 9(c) (1) of the Federal Rules of Criminal Procedure which pertain, respectively, to the illegal seizure of property and the requirement of a prompt hearing for persons arrested by federal officers pursuant to a warrant. The affidavit of defendant's counsel alleged that defendant had been kidnapped by federal agents in Brazil and forcibly brought to the United States without any legal authority for such action at the place of his arrest.

During Agent Torpey's testimony at the trial, defense counsel repeatedly objected on the same grounds as those advanced in defendant's pretrial motion. Judge Murphy overruled these objections; at one point he asked whether the objection was any different from defense counsel's earlier objection. Defense counsel stated that the objection was "for the reasons covered in my motion." When Torpey was asked what defendant had said, defense counsel made a general objection which was also overruled. The prosecutor during his summation emphasized Torpey's testimony concerning defendant's reason for going to Brazil without any objection by defendant.[3] At the time defendant was sentenced, he moved for a new trial, pointing out "the matter of the testimony of the FBI agent, as to what was told him by the defendant upon the defendant's arrival from Rio de Janeiro." He specifically renewed the claim made in the pretrial motion and protested the trial court's failure to hold a hearing on those allegations. Judge Murphy observed that perhaps defendant might better have argued for exclusion on the grounds of delay after arrest "under the McNabb case," but held that "no evidence was submitted with regard to

2. "He advised me that he had been residing in Rio de Janiero, Brazil in a private home down there; that he had been employed as a travel guide; that he had sold jewelry on occasion and had also acted as a director of motion pictures while residing in Rio de Janiero."

3. "You will recall what the defendant Indiviglio told Agent Torpey that Agent Torpey testified to. * * * He said he didn't want to go to trial and that is why he went down to Rio de Janeiro."

that." The motion for a new trial was denied.

In summary, defense counsel made no contention in his pretrial motion, during the trial, nor in his post-trial motion, that defendant had been deprived of his Sixth Amendment right to counsel, nor, except for his question to the FBI agent about an unidentified attorney, does it appear in the record that defendant had retained a lawyer or requested the aid of counsel. The testimony shows that defendant was informed of his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel.

We reject appellant's claim of error because he failed to specify in his objection to the admission of the challenged evidence the Massiah or Escobedo issues on which he now seeks to rely. Defendant's trial occurred on October 26, 1964, several months after the decision of the Supreme Court in Massiah v. United States, supra, and Escobedo v. State of Illinois, supra, which were handed down, respectively, on May 18 and June 22, 1964. It was to be expected that experienced trial lawyers, such as those who represented defendant at his trial, took note of these decisions and evaluated their relevance to defendant's post-indictment statements.

■ Defendant's pretrial motion for suppression of the challenged testimony failed reasonably to apprise the ·trial judge of the grounds asserted here. The notice of motion itself was broadly worded and encompassed so many possible errors in the pretrial proceedings that it failed to particularize any one specific ground. The supporting affidavit set forth facts bearing upon only one claim—that the defendant was illegally brought into the country by federal agents. The objections at the trial either renewed this specific objection or were merely general in form.

"At best this is a general objection which is insufficient to preserve such a specific claim as violation of a constitutional provision in obtaining the evidence. Wigmore on Evidence, § 18(C) (1). Some jurisdictions recognize an exception to the rule that an overruled general objection cannot avail proponent on appeal in the case where it appears on the face of the evidence that it is admissible for no‾purpose whatever, or where the nature of the precise specific objection which could be made is readily discernible. * * * But this exception is generally confined to the cases where such evidence was plainly irrelevant. *Where, as in this case, the objection relies on collateral matter to show inadmissibility, and in addition the exclusionary rule to be relied on involves interpretation of the Constitution, the orthodox rule of evidence requiring specification of the objection is buttressed by the uniform policy requiring constitutional questions to be raised at the earliest possible stage in the litigation.*" On Lee v. United States, 343 U.S. 747, 750 n. 3, 72 S.Ct. 967, 970, 96 L.Ed. 1270 (1952). (Emphasis added.) [4]

■ Wigmore says "the cardinal principle (no sooner repeated by Courts than ignored by counsel) is that a *general objection, if overruled,* cannot avail the objector on appeal," [5] and "a specific objection *overruled* will be effective to the extent of the grounds specified, and no further." [6]

■ This court has consistently followed these rules of evidence by requiring that an objection state accurately the ground on which inadmissibility is claimed and state this with a reasonable degree of specificity. See Taylor v. Baltimore & O. R. R., 344 F.2d 281, 287 (2d Cir. 1965), cert. denied, 86 S.Ct. 72

---

4. Justices Frankfurter, Douglas and Burton dissented on grounds unrelated to this point. Justice Black also wrote separately, without discussing the point.

5. 1 Wigmore, Evidence § 18, at 332 (3d ed. 1940).

6. Id. at 339.

(Oct. 12, 1965) (No. 309); United States v. Frascone, 299 F.2d 824, 827 (2d Cir.), cert. denied, 370 U.S. 910, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962); United States v. Ladson, 294 F.2d 535, 538–540 (2d Cir. 1961), cert. denied, 369 U.S. 824, 82 S.Ct. 840, 7 L.Ed.2d 789 (1962); United States v. Schupper Motor Lines, Inc., 262 F.2d 859, 862 (2d Cir. 1959); United States v. Sing Kee, 250 F.2d 236, 241–242 (2d Cir. 1957), cert. denied, 355 U.S. 954, 78 S.Ct. 538, 2 L.Ed.2d 530 (1958); United States v. O'Connor, 237 F.2d 466, 471–472 (2d Cir. 1956); United States v. Sansone, 231 F.2d 887, 891 (2d Cir.), cert. denied, 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500 (2d Cir. 1956); United States v. Gillette, 189 F.2d 449, 453 (2d Cir.), cert. denied, 342 U.S. 827, 72 S. Ct. 49, 96 L.Ed. 625 (1951); United States v. Mascuch, 111 F.2d 602, 603 (2d Cir.), cert. denied, 311 U.S. 650, 61 S.Ct. 14, 311 U.S. 650, 85 L.Ed. 416 (1940). See also Uniform Rules of Evidence, Rule 4 (1953).

The reason for requiring that specific objection be made is, of course, to give the judge an opportunity to correct the error and thus to avoid the necessity of further proceedings, possibly including a new trial. In the present case, for example, a proper objection might have resulted in the striking out of the evidence objected to and an admonition to the jury to disregard it. It seems entirely possible that the government could have secured a conviction without the challenged evidence. Or, as an alternative, the judge might have conducted a *voir dire* into the circumstances surrounding Indiviglio's statement. He might have sought explanation of defendant's query whether an unidentified attorney and contacted Agent Torpey. As it was, in the absence of objection, it was not determined whether defendant had or had not already retained or consulted counsel before his arrival in the United States. A *voir dire* might have established that defendant waived the assistance of counsel. The failure to make a proper objection also leaves the precise sequence of Torpey's warnings and defendant's statements uncertain.

■ Notwithstanding appellant's failure to raise sufficient objection to violation of his right to counsel, this court could notice the alleged error under Rule 52(b) of the Federal Rules of Criminal Procedure which provides:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Federal courts, including the Supreme Court, have declined to notice errors not objected to below even though such errors involve a criminal defendant's constitutional rights. See, e. g., Stein v. People of State of New York, 346 U.S. 156, 174 n. 17, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953), overruled in part by Jackson v. Denno, 378 U.S. 368, 391, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); United States v. Ballou, 348 F.2d 467 (2d Cir. 1965); United States v. Sten, 342 F.2d 491 (2d Cir. 1965).

■■ Exercise of our power to notice even "plain error," in spite of the lack of proper objection below, is discretionary. On Lee v. United States, 343 U.S. 747, 750 n. 3, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); see Lopez v. United States, 373 U.S. 427, 436–437, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Silber v. States, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962). For example, even without the explicit permission of Rule 52(b), it is within our "inherent power" to notice errors without objection "if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. O'Connor, 237 F.2d 466, 472 (2d Cir. 1956), quoting United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936).[7]

7. Appellate courts often notice error not objected to below when, under the law existing at the time of the trial, objection would have been futile and when error was asserted on review on the basis of a subsequent appellate decision. United

In this case we see no reason for finding reversible error. In view of the fact that defendant had retained experienced trial counsel and that his trial postdated the Massiah and Escobedo decisions, the failure to object on the ground now advanced must be considered something more than a mere technical defect. In any event there is nothing in the case which would dispose us to exercise our discretion to notice "plain error" under Rule 52(b).[8]

Affirmed.

States ex rel. Angelet v. Fay, 333 F.2d 12, 16 (2d Cir. 1964) (en banc), aff'd, 379 U.S. 815, 85 S.Ct. 126, 13 L.Ed.2d 28 (1965); see White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); United Brotherhood of Carpenters, etc. v. United States, 330 U.S. 395, 411–412, 67 S.Ct. 775, 91 L.Ed. 973 (1947). Similarly, it is in the interests of justice to notice error not objected to by one defendant if another defendant's conviction has been reversed on the basis of that same error. See United Brotherhood of Carpenters, etc. v. United States, supra.

8. It is unnecessary for us then to reach the question whether the failure to object was the result of defendant's intentional waiver of whatever right he may have had to exclusion of this evidence. See Henry v. State of Mississippi, 379 U.S. 443, 449–453, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Abel v. United States, 362 U.S. 217, 230–234, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Lawn v. United States, 355 U.S. 339, 354–355, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Johnson v. United States, 318 U.S. 189, 199–201, 63 S.Ct. 549, 87 L.Ed. 704 (1943).