**UNITED STATES of America, Appellee,**

v.

**John MUSACCHIA and Joseph Gambino, Defendants–Appellants.**

Nos. 967, 968, Dockets 88–1491, 88–1495.

United States Court of Appeals, Second Circuit.

Argued March 6, 1989.

Decided March 21, 1990.

494

Paula Schwartz Frome (James O. Druker, Kase & Druker, Garden City, N.Y., of counsel), for defendant-appellant John Musacchia.

Charles L. Weintraub (John L. Pollok, Hoffman & Pollok, New York City, of counsel), for defendant-appellant Joseph Gambino.

Alan Hechtkopf, Tax Div., Dept. of Justice (James I.K. Knapp, Acting Asst. Atty. Gen., Shirley D. Peterson, Asst. Atty. Gen., Washington, D.C., Robert E. Lindsay, Atty., Tax Div., Dept. of Justice, Washington, D.C., and Andrew J. Maloney, U.S. Atty., E.D.N.Y., of counsel), for appellee U.S.

Before CARDAMONE and PRATT, Circuit Judges, and LASKER, District Judge[*].

LASKER, District Judge:

John Musacchia and Joseph Gambino appeal their convictions on one count of conspiracy to defraud the United States by willfully failing to pay gasoline excise taxes in violation of 18 U.S.C. § 371 (1988) and 26 U.S.C. §§ 7201, 7202 and 7206(2) (1982). Musacchia appeals his conviction on six additional counts of aiding and abetting evasion of such taxes.

Appellants contend that it was reversible error for the prosecution to bolster the testimony of three witnesses by eliciting testimony on direct examination that their cooperation agreements with the government required them to tell the truth. Musacchia also asserts that the statute of limitations bars his prosecution on the six counts charging aiding and abetting of substantive tax evasion offenses under §§ 7201 and 7202. In supplemental briefing following the Supreme Court's holding in *Gomez v. United States*, —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (holding jury selection by magistrates not authorized under the Federal Magistrates Act), appellants urge reversal because they did not consent to jury selection by a magistrate. For the reasons discussed below, we conclude that the appeals are without merit and affirm.

## BACKGROUND

Musacchia owned and operated O.K. Petroleum ("O.K."), a corporation that sold gasoline and heating oil through retail and wholesale outlets in New York State. During the period at issue federal law imposed an excise tax of nine cents on gasoline sold by producers and certain wholesale distributors. In December 1982, O.K. applied for a Registration for Tax–Free Transactions ("Form 637") from the Internal Revenue Service ("IRS"), which would exempt the company from the excise tax. O.K.'s application was never approved. Thereafter O.K. made large purchases of gasoline from two distributors but refused to pay the distributors the money due for federal excise taxes, representing first that the purchases were tax-exempt because O.K. was about to receive, and then that it had received, a Form 637. O.K. also purchased gasoline from General Oil Distributors, Inc. ("General Oil") in 1983 and failed to pay $270,000 in excise taxes by representing that it held a valid Form 637. When General Oil discovered that O.K. lacked a Form 637 it barred all tax-exempt sales to O.K.

Musacchia subsequently devised a "daisy chain scheme" to purchase untaxed gasoline. Under this scheme Rappaport Fuel Company ("Rappaport"), which held a valid Form 637, would purchase tax-exempt gasoline from various suppliers and then create fictitious invoices for sales to transient front companies that were not controlled by appellants, but which they formed for

[*] Honorable Morris E. Lasker, United States District Judge for the Southern District of New York, sitting by designation.

the specific purpose of evading excise taxes. These companies had valid Forms 637 and operated only long enough to allow Rappaport to document the fictitious sales. Rappaport would in fact distribute the gasoline to Musacchia. Two companies that Musacchia controlled, AKA Petroleum ("AKA") and CWM Petroleum ("CWM") paid the distributors for the gasoline purchased by Rappaport. Through this scheme Musacchia purchased more than 8 million gallons of gasoline on which he failed to pay taxes of more than $777,000.

Gambino assisted Musacchia in forming AKA and concealing Musacchia's involvement in the company. Gambino solicited Joseph J. Ribando, Gambino's brother-in-law, to sign on as president of AKA and Luis Cuomo to act as Treasurer. Ribando opened a bank account and mail drop for AKA and signed checks at Gambino's request. He had virtually no other involvement with the company. Cuomo, the treasurer, had even less involvement than Ribando. Both ultimately resigned. Gambino also helped Musacchia to operate the front companies and to persuade Herman DeJonge, the owner of Rappaport, to make untaxed sales to Musacchia.

## I. BOLSTERING

During direct examination of Arthur Williams (a principal in CWM), Cuomo, Ribando and DeJonge, the government elicited testimony that cooperation agreements between the witnesses and the government required the witnesses to tell the truth and provided that if they lied on the witness stand they would be subject to prosecution for perjury. Appellants first objected, without stating grounds, to the prosecutor's questions to Ribando and Williams about these "truth-telling" provisions but these objections were overruled by the judge. After the judge overruled Musacc-

hia's objection to the prosecutor's question to DeJonge about the requirement in his agreement that he testify truthfully, defense counsel moved for a mistrial on the ground that the government had improperly bolstered the testimony of Williams, Cuomo and Siegal prior to any defense attack on their credibility.[1] The judge denied the motion but gave the following curative instruction to the jury:

> The government has brought out testimony from several witnesses that I've decided should not have been brought out concerning the possibility of being prosecuted for testifying falsely. So the testimony concerning testifying falsely, I am instructing you to disregard those statements.

Appellants now claim that, despite this curative instruction, the government's deliberate and improper questioning of Williams, Cuomo and Ribando about the truth-telling provisions of their agreements and the court's failure to sustain appellants' timely objections constitute reversible error.[2] The government concedes that the defense did not attack the credibility of Ribando, Cuomo and Williams before they testified but argues that even if subject to review, the error alleged by appellants was harmless because: 1) the judge gave a curative jury instruction; 2) defense counsel conceded during their argument for a mistrial that the entire testimony of Ribando and Williams was truthful, and therefore any bolstering was not prejudicial; and 3) Williams' statement was rendered harmless by a subsequent attack on his credibility by Musacchia's counsel and by the peripheral nature of his testimony.

■ The government argues at the outset that appellants' claim of error resulting from the admission of the cooperation agreement testimony is reversible only if it

---

1. In fact, Siegal was never asked about a cooperation agreement.

2. Because Musacchia's counsel attacked DeJonge's credibility in his opening statement, appellants concede that DeJonge's subsequent testimony about the truth-telling portions of his cooperation agreement was not error. "If the

opening sufficiently implicates the credibility of a government witness ... testimonial evidence of bolstering aspects of a cooperation agreement may be introduced for rehabilitative purposes during direct examination." *United States v. Cosentino*, 844 F.2d 30, 33 (2d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988).

was plain error, because appellants raised only general objections to the testimony at trial. Appellants reply that their objections were "apparent from the context" under Fed.R.Evid. 103(a)(1), which states that a specific ground for objection need be raised only "if the specific ground was not apparent from the context." Based on a review of the trial transcript, it is clear that appellants' objections were apparent from the context. Defense counsel specifically objected to questions about the truth-telling provisions of the agreements and not to the testimony that the cooperation agreements were entered into by the witnesses.[3] Accordingly, the objections were preserved for review.

This court has consistently held that:

Because of the bolstering potential of cooperation agreements ... we have permitted such agreements to be admitted in their entirety only after the credibility of the witness has been attacked.... [B]olstering aspects [of cooperation agreements] such as promises to testify truthfully or penalties for failure to do so may only be developed to rehabilitate the witness after a defense attack on credibility.

*United States v. Cosentino,* 844 F.2d 30, 33 (2d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988) (footnote and citations omitted); *see United States v. Jones,* 763 F.2d 518, 522 (2d Cir.), *cert. denied,* 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985). However, in *United States v. Arroyo–Angulo,* 580 F.2d 1137, 1146–47 (2d Cir.), *cert. denied,* 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978), we held that because defense counsel challenged the credibility of a government witness in the opening statement and later in cross-examination and during summation, such challenge was inevitable, and rendered harmless the error in admitting the witness's cooperation agreement into evidence during direct examination.

▆▆▆ The government concedes that it was error to question the witnesses about the truth-telling provisions prior to defense

challenges to credibility but contends that such error was harmless. Appellants argue that because the prosecutor intentionally bolstered the testimony of its witnesses the error cannot be deemed harmless under *United States v. Borello,* 766 F.2d 46, 56 (2d Cir.1985), in which the court held that the admission of and reading from the truth-telling portions of a cooperation agreement on direct examination were not harmless error even though the defense subsequently challenged part of Borello's testimony. The *Borello* court did not find it necessary to engage in harmless error analysis, *id.* at 58, stating:

[W]e have previously suggested that an *Arroyo–Angulo* error is harmless if the defendant subsequently attacks the witness's credibility. [*United States v. Barnes,* 604 F.2d 121, 151 (2d Cir.1979).] The error, however, cannot always be harmless.... [W]here we have spelled out in a series of cases the procedure for introducing cooperation agreements ... [f]or us to disapprove of the ... bolstering of the witness's testimony and then to declare it harmless error would make our remarks in the previous cases purely "ceremonial." The error cannot be deemed harmless.

*Id.* at 57–58. Appellants argue that because the prosecutor in this case deliberately questioned the witnesses regarding the truth-telling provisions of the agreements knowing such questioning was improper under the case law of this Circuit, the error in this case cannot be harmless and no harmless error analysis is required under *Borello.* As evidence of the intentional nature of the error appellants note that, during argument in the robing room on Musacchia's motion for a mistrial, a member of the prosecution team offered to withdraw the questions about the truth-telling provisions of DeJonge's agreement.

We disagree with appellants' assertion that the prosecutor intentionally violated the rule against questioning the witnesses about truth-telling provisions of their

---

**3.** Although no objection was made when Cuomo was asked about the truth-telling provisions in his agreement, counsel for Musacchia had asked that his objection to similar questioning of Ribando be deemed continuing.

agreements on direct examination prior to any defense attack on credibility. Indeed, the government contended during the argument on Musacchia's motion for a mistrial, that it construed Musacchia's counsel's opening statement challenge to DeJonge's credibility as an attack on the credibility of all witnesses, permitting the challenged questions. By contrast, in *Borello*, defense counsel did not attack the credibility of the cooperating prosecution witness during the opening statement, leading the court to conclude that the prosecution had intentionally violated the law. Moreover, *Borello* did not establish a *per se* rule that such errors can never be deemed harmless but rather that they cannot always be harmless. We conclude that the government had a good faith basis for asking the challenged questions. Accordingly, *Borello* does not bar an examination of the government's claims that the error was harmless.

■ The government contends that, because defense counsel argued during the trial that Ribando and Cuomo were telling the truth, any bolstering of their testimony was irrelevant to the outcome of the trial. During argument on the mistrial motion, Musacchia's counsel stated:

> In fact the defense has been that Williams, Cuomo and Ribando are all telling the truth but that we have an explanation for why they were used in this fashion. Their credibility was not attacked, and at least two of them I didn't ask questions of.... They weren't attacked or questioned in any fashion, and as a matter of fact as I've stated we adopt their testimony.

Based on this statement the government asserts that the defense conceded the truthfulness of Cuomo's and Ribando's testimony and, accordingly, there was no significant chance that the outcome of the trial was affected by the error. Moreover, according to the government, counsel for Musacchia subsequently attacked Williams'

credibility by arguing in summation that Williams had "lied," thereby rendering his earlier testimony about the truth-telling portions of the agreement admissible under *Arroyo–Angulo*.

Appellants assert that accepting the government's argument—that the error is harmless because Williams' credibility *was* challenged and Ribando and Cuomo's testimony *was not* challenged—is tantamount to holding that such an error can never be harmless, contrary to the holding in *Borello*.

However, appellants have not specified how they were prejudiced by the error. Appellants do not dispute that Williams' testimony was peripheral.[4] Their admission during trial that their strategy involved characterizing the testimony of Cuomo and Ribando as truthful lessens the effect of the error with respect to those witnesses. Most importantly, Judge Wexler gave a clear curative instruction to the jury not to consider the challenged testimony regarding the truth-telling portions of the cooperation agreements. Given the good faith belief by the prosecutor that the credibility of all the witnesses had been put into question by Musacchia's opening statement and for the reasons discussed above, we conclude that the admission of testimony regarding the truth-telling requirements of the cooperation agreements on direct examination was harmless error.

## II. APPLICABLE STATUTES OF LIMITATION

■ Musacchia contends that the applicable statutes of limitation bar his prosecution and subsequent conviction for the substantive crimes charged in counts 2 through 7 of the indictment. The indictment in this case was filed nearly four years after the date of the last act relating to counts 2 through 7. Musacchia asserts that the applicable statute of limitations for counts 2 through 7 is three years; the

---

**4.** The evidence that Musacchia used the company he formed with Williams as part of the illegal daisy chain scheme is not based on or affected by Williams' testimony. Williams merely testified that he helped form CWM, es- tablished certain bank accounts for the business and later helped dissolve the business. Moreover, Williams testified that he never met or did business with Gambino.

district court held that the applicable limitations period was six years. 696 F.Supp. 1548, 1550 (E.D.N.Y.1988).

The statute of limitations for criminal prosecutions arising under the internal revenue laws is found in 26 U.S.C. § 6531 (1982), which states in relevant part:

> No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that a period of limitation shall be 6 years—
>
> (1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner;
>
> (2) for the offense of willfully attempting in any manner to evade or defeat any tax or the payment thereof;
>
> (3) for the offense of willfully aiding or assisting in, or procuring, counseling, or advising, the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a false or fraudulent return, affidavit, claim, or document (whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document).

The numbered sections above describe offenses carrying a special six-year limitations period rather than the general three-year statute of limitations for internal revenue offenses. Musacchia claims that because § 6531(3) is the only internal revenue offense carrying a six-year statute of limitations which uses the term "aiding, or assisting," the aiding and abetting of all other substantive internal revenue offenses must carry the general three-year statute of limitation. Accordingly, he argues, counts 2, 4 and 5 of the indictment, under which he was convicted of aiding and abetting violations of 26 U.S.C. §§ 7201 and 7202, must be dismissed as untimely.

In support of this argument, Musacchia notes that other specifically enumerated exceptions to the general three-year statute of limitation explicitly refer to specific offenses under the code by section number. For example, 26 U.S.C. § 6531(7) provides that one of the exceptions is "for offenses described in section 7214(a)," which relates to intimidation of officers and employees of the United States. Musacchia asserts that if Congress had intended, as the government argues, to include a particular substantive offense (in this case § 7202 or § 7201) among those covered by § 6531(3) it could have done so by reference to that offense; because it did not do so with respect to the offense at issue the six-year statute of limitations applies only to the offense of aiding and abetting the filing of a false return and not to aiding and abetting of the offenses defined in 26 U.S.C. §§ 7201 and 7202 (counts 2, 4 and 5).

In *United States v. Campbell*, 426 F.2d 547, 553 (2d Cir.1970), this court held that the applicable statute of limitations for the offense of aiding and abetting under 18 U.S.C. § 2 is the statute for the substantive offense charged. The court observed:

> 18 U.S.C. § 2 does not define a crime; rather it makes punishable as a principal one who aids or abets the commission of a substantive crime.... Clearly one can violate [26 U.S.C.] § 7214(a) as an aider and abettor, and the offense, not the persons involved, determines the applicability of the six-year period of limitation.

*Id.* Musacchia fails to address *Campbell* but its analysis controls in this case. Accordingly, the statute of limitations for the substantive counts charged in the indictment apply in this case. Counts 2, 4, and 6 charge aiding and abetting violations under 26 U.S.C. § 7201, which carries a six-year limitations period as explicitly provided in 26 U.S.C. § 6531(2). It follows that the statute of limitations does not bar prosecution of these counts.

■ Counts 3, 5, and 7 charge aiding and abetting under 26 U.S.C. § 7202—willful failure to account for and pay over gasoline excise taxes. Musacchia argues for the first time on appeal that § 7202 carries a three-year rather than a six-year statute of limitations. Section 6531(4) mandates a six-year statute of limitations "for the of-

fense of willfully failing to pay any tax." [5] In *United States v. Porth,* 426 F.2d 519, 521–22 (10th Cir.), *cert. denied,* 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970), the court held, without analysis, that § 7202 falls within the six-year statute of limitations exception of § 6531(4). Musacchia relies on a more recent district court decision which held to the contrary, *United States v. Block,* 497 F.Supp. 629 (N.D.Ga.), *aff'd,* 660 F.2d 1086 (5th Cir.1980). *Block* held that the language of § 6531(4) does not track the language of § 7202:

> It seems unlikely to the Court that Congress would have used the language of so many of the § 7201 *et seq.* code sections when drafting the subsections of § 6531 but omit use of the key words of § 7202 if it had intended to make failure to "pay over" third party taxes subject to the six-year statute of limitations.

497 F.Supp. at 632. A second factor in the *Block* court's determination was that

> [Section] 6531(4) is directed at *"the* offense of willfully failing to pay any tax...." (emphasis added), not a class of offenses. It is quite clear that failure to "pay over" third party taxes [under § 7202] is substantively different from failure to pay taxes. *See Slodov v. United States,* 436 U.S. 238, 248–50, 98 S.Ct. 1778, 1785–1787, 56 L.Ed.2d 251 (1978).

*Id.* (footnote omitted).

The *Block* court's analysis is not convincing. Although § 6531(4) does not track the language of § 7202 precisely, in the Supreme Court's decision in *Slodov v. United States,* 436 U.S. 238, 249, 98 S.Ct. 1778, 1786, 56 L.Ed.2d 251 (1978), the terms "pay" and "pay over" were used interchangeably. In *Slodov,* the Court interpreted 26 U.S.C. § 6672, which applies to "[a]ny person required to collect, truthfully account for, and pay over any tax," as applying "only to failure to pay taxes...." 436 U.S. at 249, 98 S.Ct. at 1786. Although the Court was analyzing a different provision of the code—the significance of the word "any" modifying the word "person" under § 6672—and did not focus on the distinction argued by appellants in this case, it is still significant that the Court used the terms "pay over" and "pay" synonymously.

The government persuasively argues that it would be inconsistent for Congress to have prescribed a six-year limitation period for the misdemeanor offense defined in 26 U.S.C. § 7203 (failure to file a return or pay a tax) [6] while providing only a three-year limitation period for the felony offense defined in § 7202. Moreover, the language of § 6531(4)—applying the six-year statute of limitations to "the offense of willfully failing to pay any tax, or make any return ... at the time or times required by law or regulations"—suggests that it applies to any of several sections of the Code that define such an offense. For these reasons we find the reasoning of *Block* unpersuasive and conclude that a six-year statute of limitations applies to the offense defined by 26 U.S.C. § 7202 and thus to counts 3, 5 and 7 in the indictment. Accordingly, Musacchia's prosecution and conviction were not barred by the applicable statutes of limitation.

CARDAMONE, Circuit Judge:

We concur in our colleague Judge Lasker's thorough discussion of Part I (Bolstering) and Part II (Statute of Limitations), which concludes that nothing occurred during the trial which would warrant reversal

---

5. Section 6531(4) states in full that a six-year statute of limitations is required
   for the offense of willfully failing to pay any tax, or make any return (other than a return required under authority of part III of subchapter A of chapter 61) at the time or times required by law or regulations[.]

6. Section 7203 states in relevant part:
   Any person required under this title to pay any estimated tax or tax, or required by this title ... to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year....

of Musacchia's and Gambino's convictions on the merits.

## III. JURY SELECTION BY A MAGISTRATE

Following oral argument of this appeal on March 6, 1989, we granted a motion on August 30, 1989 to withhold decision on the appeal until supplemental briefs could be submitted on the issue of whether the magistrate conducting *voir dire* of the jury warrants reversal in light of *Gomez v. United States*, —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). Having now received and considered the supplemental briefs filed by appellants and the government, we turn to this issue. Appellants argue that their convictions must be reversed. We disagree and vote to affirm.

The Supreme Court in *Gomez* addressed the question of "whether presiding at the selection of a jury in a felony trial without the defendant's consent is among those 'additional duties'" permitted a magistrate under 28 U.S.C.A. § 636(b)(3) (West Supp. 1989). *Gomez*, 109 S.Ct. at 2239. Section 636(b)(3), part of the Federal Magistrates Act, limits the duties that may be assigned a magistrate to those which the magistrate could execute without being "inconsistent with the Constitution and laws of the United States." *Gomez* concluded that § 636(b)(3) did not grant magistrates authority to preside over *voir dire* in a criminal trial. Because "[a]mong those basic fair trial rights that ' "can never be treated as harmless" ' is a defendant's 'right to an impartial adjudicator, be it judge or jury,' " the Court concluded that "harmless-error analysis does not apply in a felony case in which, despite the defendant's objection and without any meaningful review by a district judge, an officer exceeds his jurisdiction by selecting a jury." 109 S.Ct. at 2248.

Since the Supreme Court's holding there have been a number of circuit court opinions addressing the issues of (1) whether *Gomez* established a jurisdictional bar to magistrates presiding over *voir dire*, and (2) whether reversal is mandated where a defendant prior to *Gomez* either consented

or failed to object to empanelment before a magistrate. In two cases handed down subsequent to *Gomez*, we held that *Gomez* did not create a jurisdictional bar to a magistrate conducting *voir dire*, and that reversal is not mandated when a defendant, prior to that decision, consented or failed to object to empanelment by a magistrate. *See United States v. Vanwort*, 887 F.2d 375, 382–83 (2d Cir.) (failure to object), *petition for cert. filed* (Dec. 21, 1989); *United States v. Mang Sun Wong*, 884 F.2d 1537, 1546 (2d Cir.1989) (explicit consent), *cert. denied*, —— U.S. ——, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990).

Here appellants, who were tried before *Gomez* was filed, neither consented nor objected to *voir dire* by a magistrate. Under *Vanwort*, there is no question that we do not find reversal warranted in these circumstances. Appellants contend—and the dissenting opinion concludes—that we may distinguish the instant case from *Vanwort* because in this case the jury was selected after our holding in *United States v. Garcia*, 848 F.2d 1324, 1332 (2d Cir. 1988), *rev'd sub nom. Gomez v. United States*, —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), which stated that "even absent a defendant's consent [and where a defendant explicitly objects] the Federal Magistrates Act permits district courts to delegate the task of jury selection in felony cases to a magistrate." We think the distinction irrelevant.

In making this argument, appellants rely upon *United States v. France*, 886 F.2d 223 (9th Cir.1989). There, faced with a factual situation identical to that now before us, the court held that failure to object would not amount to a waiver because two earlier circuit cases "presented [the defendant] with a 'solid wall of circuit authority' ... [that] had already decided, erroneously, that magistrates could conduct voir dire in felony trials. Any objection to the magistrate performing voir dire ... would, therefore, clearly have been futile." *Id.* at 228. *France* was predicated on two Ninth Circuit *en banc* opinions establishing that a defendant was excused from making a contemporaneous objection when there was a

"solid wall of authority" that would have prevented a district court from upholding the defendant's objection. *Id.* at 227–28.

Significantly, we have not established an exception to the contemporaneous objection requirement in areas where there is a "solid wall of authority" running contrary to the defendant's objection. The only authority even suggesting an analogous principle in this Circuit is a footnote, cited in the dissenting opinion, in *United States v. Indiviglio*, 352 F.2d 276 (2d Cir.1965) (*en banc*), *cert. denied*, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). The footnote acknowledges that under plain-error analysis "[a]ppellate courts often notice error not objected to below when, under the law existing at the time of the trial, objection would have been futile and when error was asserted on review on the basis of a subsequent appellate decision." *Id.* at 280 n. 7. This single line cannot be said to establish a circuit wall-of-authority exception similar to that relied upon by the Ninth Circuit.

Nor did *Garcia* itself create authority sufficient to cause defense counsel to believe any objection to jury empanelment before a magistrate would be futile. The decision in *Garcia* was promptly appealed to the Supreme Court and reversed a year later. In contrast, the Ninth Circuit already had ruled in two cases decided four years prior to *Gomez*—certiorari had been denied in both—that magistrates were empowered to conduct *voir dire* under the Federal Magistrates Act. *See United States v. Peacock*, 761 F.2d 1313 (9th Cir.), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985); *United States v. Bezold*, 760 F.2d 999 (9th Cir.1985), *cert. denied*, 474 U.S. 1063, 106 S.Ct. 811, 88 L.Ed.2d 786 (1986). Thus, the posture of the issue in our Circuit is more akin to that existing in the First Circuit where "[t]here was no binding rule . . . such as necessarily foredoomed an objection to magistrates' empaneling." *United States v. Lopez–Pena*, Nos. 87–2003 through 87–2008, slip op. at 15–16 (1st Cir. Nov. 22, 1989) (rehearing *en banc* filed Dec. 20, 1989).

■ Appellants additionally claim that *Gomez* states that a magistrate is without jurisdiction under the Federal Magistrates

Act to conduct *voir dire*. We disagree. Since *Gomez* was decided we and other circuits have focused on the "without defendant's consent" language and generally ruled that where there is either consent or a failure to object a magistrate may conduct the jury *voir dire* in a felony case. *See Vanwort*, 887 F.2d at 382–83; *Wong*, 884 F.2d at 1544; *Lopez–Pena, supra,* slip op. at 17–18 (not plain error to permit magistrate to preside since objection to magistrate must be raised or it is waived); *Government of the Virgin Islands v. Williams*, 892 F.2d 305, 310 (3d Cir.1989) (absent demand no constitutional difficulty under § 636(b)(3) with delegating jury selection to magistrate); *United States v. Ford*, 824 F.2d 1430, 1438–39 (5th Cir.1987) (*en banc*) (harmless error for magistrate to conduct *voir dire* where defendant failed to object), *cert. denied*, 484 U.S. 1034, 108 S.Ct. 741, 98 L.Ed.2d 776 (1988); *United States v. Wey*, 895 F.2d 429 (7th Cir.1990) (jury selection by magistrate is not plain error where no prejudice is shown). Concededly, *France* concluded otherwise. The court there ruled that defendant's failure to contemporaneously object to the magistrate conducting jury selection did not waive her right to appellate review. 886 F.2d at 226. But that holding may be explained, as noted earlier, by what the court perceived as the futility of defendant raising an objection below.

We think that the magistrate had subject matter jurisdiction to conduct the *voir dire* in this case. Federal courts are courts of limited jurisdiction empowered to hear only those cases within the judicial power of the United States, as set forth in Article III of the Constitution, and those over which Congress has conferred to them a jurisdictional grant. *See, e.g., Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173–80, 2 L.Ed. 60 (1803). From this principle, it has been a commandment etched into the edifice of federal jurisprudence for over 150 years that parties cannot confer subject matter jurisdiction on a federal court, not granted it by the Constitution and Congress, although they may be willing and even anxious for the court to hear and determine the case. *See Jackson v. Ashton*, 33 U.S.

(8 Pet.) 148, 149, 8 L.Ed. 898 (1834); *cf.* *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18 & n. 17, 71 S.Ct. 534, 542 & n. 17, 95 L.Ed. 702 (1951). Thus, when the Supreme Court stated that "[a] critical limitation on [the magistrate's] jurisdiction is consent," it plainly was not referring to the subject matter jurisdiction of the district court over a felony criminal trial. *Gomez,* 109 S.Ct. at 2244.

Instead, we think the "consent" language has reference to waivable matters under the Federal Rules of Criminal Procedure. Under Fed.R.Crim.P. 12 certain kinds of motions in a criminal prosecution must be raised before trial or they are waived. There are five numbered subdivisions of Rule 12(b) listing such defenses, objections and requests. Lack of subject matter jurisdiction, is not included among these waivable objections, and may be raised at any time. Fed.R.Crim.P. 12(b)(2). Subdivision (1) of Rule 12(b) provides for an objection based on defects in the institution of the prosecution. It is in this category of objectionable matters that the improper selection of the jury by a magistrate falls. It is a "fair trial" right to have an Article III judge conduct *voir dire* of the jury, *see Gomez,* 109 S.Ct. at 2248, and for the district court to direct the magistrate to perform it is a defect in the institution of the prosecution.

Unable to square the Supreme Court's use of the word "jurisdiction" with traditional notions of subject matter jurisdiction, *see Gomez,* 109 S.Ct. at 2244–45 (magistrate's present expanded criminal trial jurisdiction depends on consent), we believe that what *Gomez* intended was that—absent Congress' grant of authority in the magistrate to perform jury selection in a felony case—the improper reference to a magistrate is a waivable defect that must be raised within the time permitted by Fed. R.Crim.P. 12(c) or it is waived under Rule 12(b). Thus, a magistrate's lack of jurisdiction to act absent consent is analogous to a district court's lack of jurisdiction over the person, which is also a defense that is waived unless promptly asserted. *See United States v. Grote,* 632 F.2d 387, 388–89 (5th Cir.1980) (failure to object to per-

sonal jurisdiction of trial court because of faulty arrest warrant waived objection); 1 Wright, *Federal Practice and Procedure: Criminal 2d* § 193 (1982) (collecting cases). We conclude that the defendant's failure to make a contemporaneous objection to the delegation of jury selection to a magistrate thereby waives the objection. Like our sister circuits, we do not find empanelment before a magistrate reversible on appeal as "plain error." *See* Fed.R.Crim.P. 52(b).

In any event, we are constrained by our panel holdings in *Vanwort* and *Wong* to rule that appellants, not having raised objection to the magistrate's selection of the jury, waived their right to reversal on appeal. Hence, the judgments of conviction must be affirmed.

Judgments affirmed.

LASKER, District Judge, dissenting:

Appellants contend in supplemental briefs that their convictions must be reversed because under *Gomez v. United States,* —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) the magistrate who conducted jury selection in their case had no jurisdiction to preside. Because I agree with appellants' reading of *Gomez,* I dissent from the majority on this issue.

The Federal Magistrates Act, 28 U.S.C.A. § 636(b)(3) (West Supp.1989) states that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." In *Gomez* a unanimous court reversed the decision of a divided Second Circuit panel in *United States v. Garcia,* 848 F.2d 1324 (2d Cir.1988) and held that jury selection was not one of "such additional duties" and that, accordingly, "the Federal Magistrates Act does not allow the delegation of jury selection to magistrates". 109 S.Ct. at 2246 n. 25. The Court in *Gomez* also rejected the Government's contention that the appellants' failure to allege specific prejudice constituted harmless error. The Court stated that "a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside" was a basic

fair trial right. 109 S.Ct. at 2248. "Thus harmless-error analysis does not apply in a felony case in which, despite the defendant's objection and without any meaningful review by a district judge, an officer exceeds his jurisdiction by selecting a jury." *Id.* The appellants in *Gomez* had objected to the magistrate conducting *voir dire* but were overruled. In the case at hand the Government argues that the failure of Gambino or Musacchia to object to jury selection by the magistrate constituted a waiver and renders *Gomez* inapplicable, because that decision is limited to instances in which the appellants object at the time of the magistrate's jury selection.

However, I read *Gomez* not to be limited to cases in which defendants objected, but rather to extend at least to all cases in which no consent has been given to jury selection by a magistrate. The Court stated: "The principal question presented is whether presiding at the selection of a jury in a felony trial without the defendant's consent is among those 'additional duties' " that can be delegated to magistrates under the Act. 109 S.Ct. at 2239. Moreover, the *Garcia* court (which reached the constitutional issue as well) framed the issue below as whether the Act or the Constitution "precludes a magistrate from presiding over jury selection in a felony case without the defendant's consent." 848 F.2d at 1330. In both *Garcia* and *Gomez* the fact that appellants made contemporaneous objections seems incidental; what matters is that they did not expressly consent.

In *United States v. Mang Sun Wong,* 884 F.2d 1537, 1546 (2d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990) the court denied a post-*Gomez* petition for rehearing and affirmed its earlier ruling that reversal is not required where "there was not only a failure to object, but explicit consent, to the magistrate's selection of a jury." *Wong* is distinguishable because of the absence of express consent in the case at hand.

However, the majority and the government rely on *United States v. Vanwort,* 887 F.2d 375, 382–83 (2d Cir.), *petition for cert. filed,* No. 89–6313 (Dec. 21, 1989), in which the court relied on *Wong* and held that where there was no objection to the magistrate's selection of a jury, reversal was not required. The *Vanwort* court did not recognize or analyze the distinction between the facts before it (failure to object but no express consent) and the facts in *Wong* (failure to object but express consent).[1] The *Wong* court focused on express consent, which was missing in *Vanwort,* as it is in the case at hand.

More importantly however, *Vanwort* is distinguishable because the jury was selected in that case before the Second Circuit's decision in *Garcia,* when the law in this Circuit was still unsettled. Because jury selection at appellants' trial occurred after *Garcia,* objection would have been fruitless in the face of controlling precedent, and, accordingly, no objection was required to preserve the issue for review. *See United States v. Indiviglio,* 352 F.2d 276, 280 n. 7 (2d Cir.1965) (*en banc* ) ("Appellate courts often notice error not objected to below when, under the law existing at the time of the trial, objection would have been futile and when error was asserted on review on the basis of a subsequent appellate decision." (citation omitted)), *cert. denied,* 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

In *United States v. France,* 886 F.2d 223 (9th Cir.1989), one of three circuit court decisions to have analyzed the question presented here, a unanimous court held that *Gomez* applied retroactively to all cases pending on direct review and required reversal even where appellants had not objected to jury selection by a magistrate. The *France* court found "absolutely no indication in the tenor or text of [*Gomez* ] to suggest that the Court relied on, or did more than note—in the interest of providing a full and accurate description of the facts before it—the fact the petitioners had objected to the magistrate's conducting

---

**1.** The Third Circuit has also equated failure to object with consent in holding that *Gomez* does not require reversal in a case in which the appellant failed to object. *Government of the Virgin Islands v. Williams,* 892 F.2d 305 (3d Cir.1989).

voir dire." *Id.* at 227. The *France* court concluded that any objection to the magistrate's performing voir dire would have been futile and the appeal was thus preserved. The court held that a party does not waive its right to challenge a jury instruction if it fails to object at the time if there is a "solid wall of circuit authority" which would have barred the district court from correcting the alleged error. *Id.* at 227–28 (citing *Guam v. Yang*, 850 F.2d 507, 512 n. 8 (9th Cir.1988) (en banc) and *United States v. Scott*, 425 F.2d 55, 57–58 (9th Cir.1970) (en banc)). The court stated:

> [I]t seems to us at best unseemly, and at worst irresponsible, to penalize France for following the law as it existed at the time her jury was selected. Finally, it is incongruous to hold that a rule that is "designed to enhance the accuracy of a criminal trial," [*Solem v. Stumes*, 465 U.S. 638, 643, 104 S.Ct. 1338, 1342, 79 L.Ed.2d 579 (1984),] and which must, therefore, be given broad retroactive application, can be waived because a defendant did not guess that the law would change some time after the error was committed.

886 F.2d at 228.[2]

Most significant is the appellants' argument that their mere failure to object, absent express consent, cannot constitute waiver because the magistrate had no jurisdiction to preside. Such lack of jurisdiction requires reversal under *Gomez*. The *Gomez* Court stated:

> A critical limitation on [the] expanded jurisdiction [of magistrates under 1979 Amendments to the Act] is consent. As amended in 1979, the Act states that "neither the district judge nor the magistrate shall attempt to persuade or induce any party to consent to reference of any civil matter to a magistrate." 93 Stat. 643, 28 U.S.C. § 636(c)(2). In criminal cases, the Government may petition for trial before a district judge. "Defen-

dants charged with misdemeanors can refuse to consent to a magistrate and thus effect the same removal," S.Rep. No. 96–74, p. 7 (1979), U.S.Code Cong. & Admin.News 1979, p. 1475, for the magistrate's criminal trial jurisdiction depends on the defendant's specific, written consent.

109 S.Ct. at 2244–45 (footnote omitted); *see also United States v. Rubio*, 722 F.Supp. 77, 82 n. 3 (D.Del.1989) ("after the Court's decision in *Gomez*, it appears that the magistrate may not conduct jury voir dire in a felony trial under the statute regardless of whether the parties consent").

Appellants argue persuasively that the Act's strict and explicit requirements of consent for referring misdemeanor trials to magistrates mandate that such consent must also be required to create jurisdiction in a felony case. *See United States v. Marcyes*, 557 F.2d 1361, 1368 (9th Cir.1977) (requiring reversal where Magistrate failed to advise defendant accused of minor offense of right to jury trial, in violation of 18 U.S.C. § 3401(b) (1988)); *Hall v. Sharpe*, 812 F.2d 644, 647 (11th Cir.1987) ("[e]xplicit, voluntary consent is crucial [to provision of Act authorizing magistrates to conduct civil jury trials]"); *Lovelace v. Dall*, 820 F.2d 223, 225 (7th Cir.1987) (unless party consents to have a magistrate enter a final judgment pursuant to 28 U.S.C. § 636(c)(1)(3) magistrate lacks jurisdiction). Moreover, I find persuasive Judge Altimari's dissent in *Wong*, 884 F.2d at 1546: ("In view of the principles expressed in *Gomez*, ... a magistrate has no power to seat a jury in a felony case with or without the defendant's consent.... Jurisdiction to preside at felony trials remains the province of district judges."). *See also Reale Int'l, Inc. v. Fed. Republic of Nig.*, 647 F.2d 330, 331 (2d Cir.1981) ("parties cannot confer jurisdiction on a federal court by consent or stipulation").

The Government's response to the jurisdiction argument raised by appellants is

2. In one of three other circuit courts to address this issue, *United States v. Lopez–Pena*, Nos. 87–2003 through 87–2008 slip op. at 16 (1st Cir. Nov. 22, 1989) (rehearing *en banc* filed Dec. 20, 1989) a divided panel concluded that "[b]ecause the precedential wall in this instance was rather porous, there was no valid reason for defense counsel to believe that timely objection to the magistrate's involvement would be futile," and that in any event even in circuits in which courts had authorized magistrates' jury selection the courts had not insisted that the practice be followed.

**506**

that nothing in *Gomez* suggests that the district court lacked jurisdiction to try the case and enter judgment merely because it may have lacked jurisdiction to refer jury selection to the magistrate. *See United States v. Lopez–Pena*, 890 F.2d at 495 n. 6 (stating in dicta that magistrate conducting voir dire lacked statutory authority to exercise jurisdiction but trial court retained subject matter jurisdiction throughout and describing error as procedural, not jurisdictional). This argument is unpersuasive in light of the Supreme Court's statement that "a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside" is "basic." 109 S.Ct. 2248. Moreover, *Gomez* explicitly held that jury selection by a magistrate was not harmless error "in a felony case in which, despite the defendant's objection and without any meaningful review by a district judge, an officer exceeds his jurisdiction by selecting a jury." *Id. Gomez* is not limited to cases in which the defendant objects, but rather to cases in which no consent is given. In sum, under *Gomez*, the magistrate who conducted jury selection in this case lacked jurisdiction to preside and the convictions of Gambino and Musacchia must be reversed because they did not give express consent to this procedure.